## UNITED STATES v. STEIN et al.
### No. 437.

Circuit Court of Appeals, Second Circuit.

June 29, 1931.

Carl Brecher, of New York City, for appellant Stein.

Blau, Perlman & Polakoff, of New York City (Moses Polakoff and Samuel Mezansky, both of New York City, of counsel), for appellant Lagatutta.

Sanford H. Cohen, of New York City (Sanford H. Cohen and George Cohen, both of New York City, of counsel), for appellant Porges.

George Z. Medalie, U. S. Atty., of New York City (Ellamarye Failor, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellants were convicted of conspiracy to violate section 225 of the Criminal Code (U. S. C. title 18, § 355 [18 USCA § 355]). Section 37, Cr. Code (U. S. C., title 18, § 88 [18 USCA § 88]). Section 225 makes it a crime for "whoever, being a postmaster or other person employed in or connected with any branch of the Postal Service, shall loan, use, pledge, hypothecate, or convert to his own use, or shall deposit in any bank, or exchange for other funds or property, except as authorized by law, any money or property coming into his hands or under his control in any manner whatever, in the execution or under control of his office, employment, or service, whether the same shall be the money or property of the United States or not * * * shall be deemed guilty of embezzlement; and every such person, as well as every other person advising or knowingly participating therein, shall be fined * * * or imprisoned * * * or both."

The conspiracy charged here began September 1, 1928, and ended April 3, 1929, and was formed in the Southern district of New York. Lagatutta was employed in the postal service of the United States, selling postage stamps at the Times Square Post Office Station, and he agreed with his fellow conspirators to use money belonging to the United States for the purchase of other United States postage stamps from Stein at a discount. He gave a share of the profits which accrued after he had sold these stamps bought from Stein to Porges. He received a package containing $637 worth of stamps from Stein on April 3, 1929. Stein confederated with Lagatutta and Porges to the end that Lagatutta would embezzle moneys which came into his hands in the course of his service in the post office and use it to purchase stamps from him (Stein) at a discount, and then Porges would share in the profits. Lagatutta met Porges at the Times Square Station, and was handed an envelope containing $637 worth of stamps, and then paid Porges a share, after he sold the stamps which he had thus purchased. There was evidence that Lagatutta passed him a sum of money.

Stein went into the stamp business in July or August, 1928, and Porges told him he might sell the stamps for him and later introduced him to Lagatutta. These sales were made and the moneys obtained from Lagatutta at the Times Square Station. Lagatutta was the wholesale clerk at this station, and was seen passing out money to Stein on March 29, 1929. He was seen putting some bills in his pocket after a sale on March 30, 1929, and later passing bills to Porges, and again on April 2, 1929, Lagatutta was seen selling postal cards to an unknown man and afterwards giving some of the money received in the sale to Porges. There was testimony that Winfield, a stamp clerk in the Grand Central Station, gave Porges "money right out of the cash drawer" in return for stamps which he had not sold to Porges. This was done at Porges' request. This testimony, prior in date, was received by the court as showing a criminal intent.

There is testimony that, during the time named as marking the dates of the existence of the conspiracy, one Kelton, an unnamed conspirator, sold stamps to Porges on three different occasions and waited while Porges took the stamps to the Times Square Station and returned with the money. Stein came into the business in the latter part of 1927 or early in 1928; thereafter the sales were made to Lagatutta. It was fully established that each appellant was connected with the conspiracy.

There was no explanation given as to Porges' receipt of money from Lagatutta other than his participation in the crime charged. It was clear that government funds were used. Indeed, Lagatutta admitted that he gave Stein money received at his stamp window in the course of his official duties. This amounted to a violation of the law.

■ It is argued that a charge of conspiracy to violate section 225 will not lie. Since an employee of the postal service may not loan, use, pledge, hypothecate, or convert to his own use funds and property of the government in his possession and control, if he does, he commits an offense without the concurrent action of any one else. Indeed, it is only where a second party knows the character of the funds which he receives that it is possible for him to concur in the unlawful purposes, and the knowledge on the part of the second party does not change or alter the nature of the offense if the postal employee does the forbidden things enumerated in the statute. Therefore there is no necessity for concurrent action of another to make out the substantive offense denounced as unlawful in the statute. When Lagatutta used money coming into his hands, under the control of his office, to assist Stein in his enterprise, he violated the statute, and since the three appellants conspired to violate the statute, the charge of conspiracy is sufficiently established. Robilio v. U. S., 291 F. 975 (C. C. A. 6); Laughter v. U. S., 259 F. 94 (C. C. A. 6); Israel v. U. S., 3 F.(2d) 743 (C. C. A. 6).

It is argued that the indictment is indefinite and uncertain. On the contrary, we think it sufficient and clearly apprises each of the appellants of the crime which they were called upon to meet, and it is sufficiently explicit to avail appellants on any subsequent plea of former conviction. Hauger v. U. S. (C. C. A.) 173 F. 54. It charges an unlawful agreement and every essential element of the agreement, and particularly sets forth the time, place, and circumstances of the agreement and the carrying out of the conspiracy.

■ Complaint is made of the receipt of testimony as to the admission made by Stein, but this is without merit. The court limited the testimony given by the witness as to this admission as applicable only to Stein, and cautioned the jury to guard against its further use. It contained a statement as to the time he met Porges, the place he met him, and the introduction given by Porges to Lagatutta. There was no error in admitting this as against Stein.

■ It is argued that the assistant United States attorney improperly referred in summation to "robberies of thousands of dollars worth of stamps," as indicating the source from which the stamps in question came. On objection, the court properly made known to the jury that this was merely speculation on her part and must be regarded by the jury as such. While there was no evidence of the robbery of the stamps, the stamps were being sold for less than their value. Counsel for the government kept well within the limitations required, and no prejudicial error was established.

■ There is testimony, to which objection was made, to the effect that Porges received stamps from Kelton more than one year prior to the date of the filing of the indictment, at a place about half a block from the Times Square Station. He was shown to have walked toward the station and the inference is that he went there to sell the stamps. It is permissible to show that a conspirator, during the time of the conspiracy, acted with another coconspirator, unnamed in the indictment and represented to be unknown to the grand jury. Porges had in truth sold stamps to Lagatutta for a period continuing up to the time that Stein entered the conspiracy. It was to be expected that he would take Stein to Lagatutta when Stein started in selling stamps. Robilio v. U. S., 291 F. 975 (C. C. A. 6). The evidence of the sale through Kelton was admissible as bearing on his intent. Workin v. U. S., 260 F. 137, 139 (C. C. A. 2).

We find no errors prejudicial to the appellants such as would require a reversal. The convictions are affirmed.

Judgments affirmed.