## UNITED STATES v. PARK AVENUE PHARMACY, Inc., et al.

### No. 169.

Circuit Court of Appeals, Second Circuit.
March 7, 1932.

See, also, 24 F.(2d) 308.

Erwin Tobach, Benzion Vogel, Aaron Medoff, Gregory Sheaber, Leopold Sisselman, Morris Friedberg, Ephraim Levy, and Abraham Margules, who will be treated as a separate group and for convenience called the druggists, were, with J. Robert Cogen and George Steiger, and some others, convicted after a trial by jury on an indictment in one count charging them and thirteen others with conspiring to violate the National Prohibition Act. Only those named have appealed. Jacob Glasgal and Henry Alexander were alleged to have participated in the conspiracy, but they testified before the grand jury, were not indicted, and testified as witnesses for the government at the trial.

They will be included in the group of druggists in outlining the plan of the conspiracy.

It was alleged that the defendants conspired with each other and with others unknown to sell, transport, furnish, and possess intoxicating liquor between May 1, 1926 and September 1, 1927, in violation of the National Prohibition Act (27 USCA). Their plan of action was as follows: The druggists held permits to withdraw whisky and to dispense it upon duly issued physicians' prescriptions and were to withdraw whisky under their permits. J. Robert Cogen was to solicit and purchase from persons unknown blanks furnished to duly authorized physicians for prescriptions for liquor, "said blanks having been falsely made to represent and purporting to be prescriptions duly issued when in fact as all of said defendants well knew and intended, the said prescriptions were not issued in conformity with law and were not issued to any person by whom the use of such liquor as a medicine was necessary"; Cogen should also sell to the druggists liquor prescription blanks which all the defendants knew had been stolen from the physicians to whom they had lawfully been issued; unknown persons should insert in said blanks the names of fictitious persons purporting to be the patients for whose use the liquor was intended; and the druggists should sell, furnish, and deliver whiskey for beverage purposes to Cogen and others and "should exhibit to agents of the Bureau of Internal Revenue said prescription blanks purporting to be prescriptions for liquor to account falsely for liquor unlawfully sold by them. * * *" Thirty-one overt acts in furtherance of the conspiracy were alleged to have been committed. Of these, only the following which took place in the city of New York need be mentioned: Steiger received ninety of the stolen prescription blanks; Cogen sold twenty blanks to Glasgal; each of the druggists canceled one or more of the blanks.

It was proved that Cogen was a salesman for a whisky distillery permitted to sell whisky to druggists for lawful use. Alexander and Glasgal purchased their whisky through him, and proof of the conspiracy above outlined as to Cogen, Alexander, and Glasgal was complete. It was proved that subscription blanks were stolen by Steiger from physicians and used in the conspiracy, and that he did receive the stolen blanks as charged in the indictment. It was proved that all of the druggists who have appealed canceled one or more of the blanks traceable to the possession of the conspirators, but the circumstances under which they canceled such blanks were not disclosed, nor was it shown that they knew those prescriptions were presented to them in pursuance of any conspiracy to violate the law. They simply had them and used them as they did other liquor prescription blanks. They looked like lawful prescriptions of physicians authorized to write them.

George H. Combs, Jr., of New York City, for appellants Tobach, Vogel, Medoff, Sheaber, Sisselman, Friedberg, Levy, and Margules.

Sanford H. Cohen, of New York City (William C. Hecht, Jr., and George Cohen, both of New York City, on the brief), for appellant J. Robert Cogen.

John Joseph Babe, of New York City, for appellant Steiger.

George Z. Medalie, U. S. Atty., of New York City (Joseph F. Sharp and Elbridge E. Gerry, both of New York City, of counsel), for the United States.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

The proof of participation in the conspiracy by the druggists who have appealed is very sketchy. Some of them may have purchased whisky through Cogen, though even that is left uncertain. No one testified about the circumstances surrounding the cancellation of any of the prescriptions they filled. What they did was to sell whisky on such prescriptions and thus account for so much of the whisky they withdrew. In some instances they had several prescriptions from the same book bearing consecutive numbers. It is argued that this fact shows that they took such prescriptions all at one time from one person and so received them under circumstances which show that they were parties to the conspiracy. Such reasoning as this is so far from proof of guilt beyond a reasonable doubt of any participation in the unlawful agreement with which they were charged that these men have been convicted merely because they might have agreed with the conspirators; although it is quite as reasonable to believe from the lack of proof that they canceled the prescriptions in good faith in the regular course of their business as they were presented by the various ultimate consumers. That the real conspirators may have sold some of the prescriptions to others who took them to these

druggists to be filled is just as reasonable to believe as that these druggists were in the conspiracy because they filled some of the prescriptions. The fact is that everything about the case as to them except their cancellation of a few of the prescription blanks is the merest conjecture.

Cogen and Steiger, however, were proved guilty of the conspiracy by evidence so conclusive that we need consider only the sufficiency of the indictment and what they claim to have been prejudicial error committed at the trial.

■ The indictment set forth the agreement which was the gist of the conspiracy to violate the National Prohibition Act by unlawfully dealing in whisky for beverage purposes under the guise of withdrawing and dispensing it on the prescriptions of physicians in a legitimate way for medicinal use. The means and methods agreed upon were alleged, and so was the part each defendant agreed to play in carrying out the plan. The so-called overt acts are only important as they afford proof of the agreement. All the defendants were plainly advised as to the ingredients of the crime with which they were charged and so enabled to prepare their defense if they had any. There could have been no doubt in the mind of the trial judge about what crime was alleged or in that of any defendant, and a second prosecution for the same offense would be completely answered by a plea of former jeopardy based upon the trial on this indictment. These general considerations adequately protect the innocent accused and confine the conviction of the guilty to a specific crime alleged. No more is now required. United States v. Stein et al. (C. C. A.) 50 F.(2d) 1025; Haynes et al. v. United States (C. C. A.) 4 F.(2d) 889; United States v. Illinois Alcohol Co. et al. (C. C. A.) 45 F.(2d) 145; Hill v. United States (C. C. A.) 42 F.(2d) 812.

■ Objection was made to the introduction in evidence of certain papers found upon Cogen when he was arrested and searched. Before this trial, an application for an order to suppress was made and denied in the District Court. An appeal to this court was dismissed because the order was not final. Cogen v. United States (C. C. A.) 24 F.(2d) 308. That decision was affirmed after a petition for certiorari had been granted. Cogen v. United States, 278 U. S. 221, 49 S. Ct. 118, 73 L. Ed. 275.

It appeared that after Glasgal had turned informer he told Cogen by telephone that the agents of the government were investigating and that he could sell him no more whisky for a time. One of the prohibition agents stood beside Glasgal when he telephoned Cogen, who replied that the agents probably wanted some money and suggested that Glasgal try to satisfy them in that way. Later, acting under the instructions of the agents, Glasgal telephoned Cogen to come for a case of whisky. The agents waited in a restaurant across the street from Glasgal's store. They saw an automobile stop in front of the store; saw two men get out of it and go in; saw one of them come out in about half an hour with a package about the size of a case of whisky; saw him put the package into the automobile and drive rapidly away. One of the agents tried unsuccessfully to stop the car. The other agent entered Glasgal's store and found Cogen in a back room. There was an empty whisky case on the floor. The agent identified himself, told Cogen he was under arrest, and searched both him and Glasgal. Among the papers introduced in evidence were numerous prescription blanks and Cogen's check book, which were taken from him when he was searched. The arrest was made without a warrant. That the agent had reasonable cause to believe that Cogen had just before obtained whisky from Glasgal by means of prescription blanks in violation of the National Prohibition Act is perfectly plain. That this whisky had been obtained in pursuance of the conspiracy is also true, provided the conspiracy had not, as the defendants claim, already ended. If Cogen had just acted to further the plan of the conspirators, he had been engaged in the commission of a felony.

It is argued that the conspiracy ended when Glasgal and Alexander confessed, and without doubt they did then withdraw from it, although the others did not know that. Indeed, Glasgal was acting in actual concert with the government agents when Cogen and his unknown confederate obtained the last package of whisky. He did not intend to supply that whisky except to make Cogen's arrest possible. But the conspiracy was not confined to Cogen, Glasgal, and Alexander. It surely included Steiger, the defendants who were convicted but did not appeal, and probably others unknown, although whether others were in it is now of no moment. When Glasgal and Alexander withdrew, the conspiracy still continued so far as the rest were concerned. Cogen remained active in it until the minute he was arrested and the last whisky he got from Glasgal doubtless went to some of the conspirators. The conspiracy itself was in operation when Cogen

was apprehended and searched. In fact, he was caught almost instantly after acting in it.

It is claimed that a prohibition agent at the time of the arrest was not a peace officer and so had only the right of a private citizen to make the arrest. The point is of no consequence in the decision of this case. Although it does not appear that Cogen was told at once why he was arrested, it is plain that he was arrested for the felony—for the conspiracy—to further which he had just acted. He was arrested in New York where a private citizen may lawfully make an arrest when "the person arrested has committed a felony, although not in his presence." New York Code of Criminal Procedure, § 183. We need not discuss the distinction between the knowledge a private citizen must have that a felony has been committed "although not in his presence" and that of a peace officer who may act on reasonable cause to believe. Cogen had committed a felony. He was the man arrested. Even if the prohibition agent possessed only the power of a private citizen to arrest, he did arrest the guilty man in a situation which, to the personal knowledge of the agent, fairly reeked with proof of his guilt. Moreover, Cogen was in fact guilty. Consequently the arrest was lawful. The search of his person after a lawful arrest and the seizure of the papers found upon him were lawful incidents of the arrest. Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; United States v. Kirschenblatt (C. C. A.) 16 F.(2d) 202, 51 A. L. R. 416. None but Cogen could question the legality of the seizure anyway. In re Dooley et al. (C. C. A.) 48 F.(2d) 121.

During the trial, one of the assistants to the District Attorney testified in explanation of a chart which had been prepared to illustrate graphically the way the government's evidence showed the conspirators had acted to withdraw the whisky and make it available for beverage use. The chart was admitted in evidence and used as an exhibit by the jury. There is no claim that this chart·was erroneous. The conspiracy was rather complicated, and we see no reason to believe that the use made of such a clear-cut illustration of how the plan was carried out violated any legal rights of the defendants. The use of it was a matter within the discretion of the trial court. It was not used as independent evidence, but simply to make the evidence which had been introduced more intelligible. In the absence of any indication that any-

thing was done to mislead any one as to the import of the evidence so illustrated we do not find an abuse of discretion. Compare People v. Johnson, 140 N. Y. 350, 354, 35 N. E. 604–606.

We shall not discuss in detail any exceptions to the charge or to the failure to comply with some of the altogether too numerous requests to charge. The court fairly and plainly presented the issues to the jury with the applicable law clearly and completely stated.

Judgment as to Cogen and Steiger affirmed. Judgment reversed as to all other appellants.