## UNITED STATES v. SCHENCK et al.
### No. 60.

Circuit Court of Appeals, Second Circuit.
March 21, 1942.

704

Corbin & Bennett and Newgass & Nayfack, all of New York City (Joseph M. Proskauer, Harold H. Corbin, David Katz, Edward J. Bennett, Bertram S. Nayfack, A. H. Frisch, and Henry Klein, all of New York City, of counsel), for appellant Joseph M. Schenck.

Corbin & Bennett and Newgass & Nayfack, all of New York City (John W. Davis, Bertram S. Nayfack, A. H. Frisch, Porter R. Chandler, Francis Shackelford, and Laurence Eliot Bunker, all of New York City, of counsel), for appellant Joseph H. Moskowitz.

Mathias F. Correa, U. S. Atty., of New York City (Samuel Brodsky, Louis W. Goodkind, and Boris Kostelanetz, Asst. U. S. Attys., all of New York City, of counsel), for appellee.

Before SWAN, CHASE, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The appellants were convicted under an indictment containing four counts. The first three counts charged them with attempting to evade and defeat the income tax liability of appellant Schenck for the calendar years 1935, 1936 and 1937 respectively, contrary to 26 U.S.C.A. Int. Rev.Code, § 145(b). The fourth count charged a conspiracy to commit the crimes alleged in the prior counts. After a lengthy trial the jury found Schenck guilty on counts one and two and acquitted him on counts three and four. Count one related to taxes for the year 1935, count two to those of 1936. On each of said counts he was fined $10,000 and sentenced to imprisonment for three years, the terms of imprisonment to run concurrently. The appellant Moskowitz was found guilty on count two and was acquitted on the other counts. He was sentenced to imprisonment for a year and a day and was fined $10,000.

The crime defined in 26 U.S.C.A. Int.Rev.Code § 145(b) may be committed by taking fraudulent deductions from the gross income reported as well as by fraudulently failing to report income received. United States v. Ragen, 62 S.Ct. 374, 86 L. Ed. ——, Jan. 5, 1942; United States v. Kelley, 2 Cir., 105 F.2d 912, 918. To establish its case the government must prove not only an attempt wilfully to defraud it but also that a tax in addition to what the taxpayer had already paid remains due and owing. Gleckman v. United States, 8 Cir., 80 F. 2d 394; Tinkoff v. United States, 7 Cir., 86 F.2d 868, certiorari denied 301 U.S. 689, 57 S.Ct. 795, 81 L.Ed. 1346. It is not necessary, however, for the prosecution to prove an evasion of the entire amount alleged in the indictment; the proof is sufficient if it shows any substantial portion of the tax liability to have been wilfully evaded. Tinkoff v. United States, supra, 86 F.2d at page 878. In the case at

bar count one of the indictment charged that Schenck, abetted by Moskowitz who supervised the preparation of his returns, wilfully attempted to evade or defeat a part of his income tax liability for 1935, namely $189,495.31 thereof, by fraudulently asserting a deduction of nearly $276,000 as a loss sustained on sales of certain stocks and a further deduction of approximately $25,000 for alleged business expenses. Count two charged a similar attempt to evade tax liability for 1936 by taking a fraudulent deduction of about $40,000 for business expenses. In their appeals both appellants unite in asserting errors with respect to count two, upon which both were convicted, and appellant Schenck asserts additional errors with respect to count one, upon which he alone was convicted. The assignments of errors challenge the sufficiency of the evidence, the adequacy of the court's charge and the conduct of the trial in respect to admission and exclusion of evidence.

■ We shall consider first the deductions based on the stock sales. It is Schenck's contention that there was no evidence of fraud, submission of this issue to the jury was error, and the charge respecting it was incorrect. The sales in question were two: one to William Goetz of a block of Jockey Club preferred stock, the other to Roland West covering Hotel Company stock. Goetz and West were old friends of Schenck and each was, or had been, a business associate of his. The formalities of sales were scrupulously complied with; the stock certificates were delivered to the respective purchasers and the shares were transferred on the books of the corporations, but there was ample evidence making the bona fides of the transactions highly questionable. Goetz testified that he gave Schenck a check for $5,000 and Schenck handed back $5,000 in currency as "he didn't want me to lose any money on the transaction." On direct examination Goetz said the check and cash were exchanged at the same time, but on cross examination he stated that the cash may have passed a day or two later. He admitted that he always stood ready to give the stock back to Schenck at any time on request. The books of both Schenck and Goetz record the "sale" and "purchase" of the Jockey Club stock but contain no reference to the $5,000 cash handed over to Goetz. The good faith of the sale to West was subject to similar suspicions.

The details are somewhat more complicated. It will suffice to say that the money which West paid Schenck under his contract to purchase the Hotel Company stock was supplied by Schenck himself and no entries of the sums given West appear in Schenck's books. We think enough has been said to demonstrate that whether the purported sales to Goetz and West were bona fide or sham was a question for the jury under proper instructions.

■ In the court's charge on this subject we find no prejudicial error either in the instructions given or in those refused. Objection is made to the word "legitimate" in the instruction that the jury "must decide whether these sales were legitimate or not"; but this was immediately explained to mean whether the sale "was real or whether it was pretense." The jury was also told that they were to determine "whether one party was acting merely as a dummy or tool of the other." We do not see how the issue could be stated more simply. And the issue having been stated thus, it was not necessary to charge that an intentional sale for the very purpose of realizing a tax loss is not a criminal evasion of tax, or that the sales were valid, if Schenck parted with the ownership and control of the stocks. If the "sale" was a mere pretense, the consequence would be that the transferee would hold the legal title for the transferor; upon the evidence no inference is possible that he was to acquire it for himself except as a bona fide purchaser, or that Schenck intended to make him a gift of the shares. That Schenck was not proved to have exercised control of the shares after the transfer is not conclusive as to the bona fides of the transaction. In view of the devious ways in which both transactions were financed, the jury was not obliged to accept the testimony of the purchasers that they regarded themselves as owners. It is urged that a sale is not invalidated by the fact that the seller has aided the purchaser in helping him to finance his purchase, or has disposed of the purchase price by gift—even though the gift be made to the purchaser himself. But the cases cited for these propositions presuppose a bona fide sale, not a pretense of selling.

■ The contention that there should have been submitted to the jury the question whether the stocks became worthless during either 1935 or 1936, in the event that the sales were found to be sham, is

without substance. This error is assigned by both appellants as to the year 1936. The evidence would not have supported a finding of worthlessness in either year. The 1935 governmental restriction on gambling in Mexico and the passage of an expropriation law in 1936 undoubtedly produced a marked decrease in the value of the stocks but neither event made them forthwith worthless. For several years thereafter each corporation continued to own assets believed to be in excess of its liabilities. The Hotel Company brought a suit for the value of its expropriated property, appraised in 1938 at $4,000,000, and the Jockey Club in the same year had $55,000 in cash which it invested in the Baha California Jockey Club. No more need be said to demonstrate that no deduction was permissible in 1935 or 1936 on the theory that the stocks had become totally worthless in either of those years.

We now pass to the deductions for business expenses. Such deductions were taken in each of the years 1935 and 1936; the questions raised are common to both years, and as to 1936 are raised by both appellants. It is contended that the evidence of fraud was insufficient to support the verdict and that errors were committed in charging the jury on the subject of deductions for business expenses.

For an intelligible discussion a further statement of how the returns were prepared is necessary. For several years Schenck had been an important figure in the moving picture industry and in 1935 he became chairman of the board of directors of Twentieth Century-Fox Film Corporation. He resided in California. A complete set of double entry books was kept for Schenck in Los Angeles by John B. Codd, comptroller for said corporation. A similar set of books was maintained in New York by Moskowitz, who was in charge of Schenck's personal New York records. The records in Los Angeles were treated as subsidiary to the New York records. Codd sent Moskowitz weekly statements of Schenck's receipts and disbursements as well as "year-end statements." The Los Angeles books were supported by a complete system of vouchers, each check having a voucher on which was entered the nature of the disbursement and the account to which it was to be charged. Bills were submitted for Schenck's approval before vouchers were made out, and the bills, receipts and notations thereon were filed

away with the corresponding vouchers. The vouchers covering California expenditures were kept in the Los Angeles office and were not sent to Moskowitz, although he could have obtained them on request. When the time came for making up an income tax return Moskowitz compiled the data, using the year-end statement received from Codd but not the weekly statements, and submitted his worksheets to a tax man named Schadler, who filled out the return and sent it to Schenck for signature. After being signed it was returned to Moskowitz for filing with the collector of internal revenue in New York. In compiling the income tax data for his worksheets Moskowitz did not attempt to make any accurate separation between business and personal expenses. He knew that Schenck entertained lavishly and that part of his outlay for entertainment could properly be treated as a business expense. He adopted the method of estimating the deductible business expenses by taking an arbitrary percentage of certain items which he knew would include both business and personal expenditures. This method of computation resulted in producing deductions which had little relation to Schenck's actual business expenses and included many items which were proved to be of a purely personal nature. It is conceded that Moskowitz could have gotten more accurate information by using the weekly reports and could have obtained additional details by sending for the Los Angeles vouchers, but it is urged in defense of his method that no amount of detail would have enabled him to determine the exact sum deductible, that some estimate was inevitable and that he believed that any inaccuracies in the figures reported in the return would be more than offset by his omission from consideration of other business expenditures by Schenck. But the issue submitted to the jury was not whether the deductions taken were excessive, nor whether a better method of estimation could have been employed; it was whether the return was false and the deductions fraudulently asserted. On that issue the evidence presented a jury question. Thus, for the year 1936, for which the year-end statement received from Codd showed "Cash $38,399.21," "House Expenses $24,951.87" and "Rent—Palm Springs House $5000," a flat 50 per cent. of these items was taken as representing deductible expenses. Certain other categories of expenditures, equally likely to be personal, in part at least, were taken at 100

per cent. for deduction. In this manner a total business expense of $44,676.60 was arrived at, and this was carried over into Schenck's 1936 return as "Hotel Expenses $4792.46" and "Railroad Transportation and Entertainment $39,884.14." Evidence was presented tending to prove that of the $38,-399.21 of cash, deducted at the 50% rate, $10,000 represented a gambling debt and $15,000 the cash supplied West for his "purchase" of the Hotel Company stock. Other expenditures deducted in full were proved to be deductible, if at all, at a smaller percentage than the 100% taken. Similarly in the 1935 return the deductions for business expense were likewise exaggerated, even after crediting the taxpayer with such items, not originally claimed, as were proved to be legally deductible. Whether the deductions taken in either year resulted from innocent mistake or from fraudulent purpose was for the jury to determine.

■■■ Numerous objections are urged with respect to instructions given and refused. The appellants' most strenuous complaint relates to the charge relating to the use of estimates. The jury was told that where the taxpayer lacks information enabling him accurately to apportion items of expense between business and personal purposes, the law allows an estimate to be made, and the charge then continued

"In making an estimate of business expenses, the taxpayer must rule out all items which he knows to be purely personal. Likewise, where an item is partly business and partly personal, he may not apply an estimated percentage to that item if he has or could obtain information from which he could make an accurate allocation.

"If you find that, in arriving at the amounts claimed for business expense deductions on the returns of the defendant Schenck, there have been included in applying an estimate or percentage any item of expense which either in whole or in any definite portion were personal in nature, then you may find that such items have been improperly included.

"If you find that any such item has been improperly included in figuring the amount claimed for deductions as business expenses, then you must consider whether the defendants knew or had good cause to know of the improper inclusion and whether either or both acted with fraudulent intent."

We think this is a correct and fair statement of the applicable principles. As this court ruled in Cohan v. Commissioner, 2 Cir., 39 F.2d 540, 543, 544 absolute certainty is usually impossible and is not necessary; as close an approximation as possible will suffice. See also Blackmer v. Commissioner, 2 Cir., 70 F.2d 255, 257, 92 A.L.R. 982. But in the case at bar we can see no effort to approximate accuracy. Whether this was the result of a fraudulent intent was for the jury to say. The jury was told that the defendants could not be convicted if they were merely "negligent and careless in making the return."

■■■ Complaint is also made that charging that "traveling and living expenses while away from home and entertainment can be deducted as business expenses if the traveling and living expenses and entertainment are legitimate expenses incurred in the carrying on of a business," excluded entertainment expense at home as a permissible deduction. We think this is a misconstruction of the language used; we do not read it as limiting entertainment expenses to entertainment away from home. Further objections are raised to the adjective "legitimate," and to the failure of the court to define what are ordinary and necessary expenses of a business. But these objections are likewise groundless. One meaning of "legitimate" is "real" or "genuine," and that this was the sense in which the court used it is apparent from the sentence in which the jury was told that if the deductions "are not necessary and legitimate expenses incurred in carrying on his business," they must decide whether the deductions were placed on the return "with a wilful attempt to defeat and evade the tax if any was due." We find no prejudicial error in the portions of the charge relating to deductible expenses.

■■■ Additional complaints regarding instructions given or refused may be disposed of briefly. The contention that the jury was confused as to the crime charged in the second count cannot be maintained. The jury was informed at the outset that the charge as to the 1936 return was the fraudulent assertion that Schenck had deductible expenses authorized by law in excess of about $40,000. The instruction as to failure to report income derived from gambling transactions cannot reasonably be read as referring to the second count. It plainly related to the third count, which charged the receipt of $100,-

000 more income than was reported. This is likewise true of that portion of the charge complained of because it told the jury that a conviction could be had even though no additional tax was due. Having been acquitted upon the third count, the appellants were obviously not prejudiced by any errors in the instructions directed to this count. Moreover, the court had clearly stated previously that the first element of the crime in the first three counts was whether Schenck "owed more tax than he reported." The refusal to charge that the taxpayer was entitled to the deduction of an item, if proper, even though not claimed in his return, was, if error, harmless error, since omitted proper deductions were not proved in an amount sufficient to offset the improper deductions taken. See Paschen v. United States, 7 Cir., 70 F.2d 491, 502. No prejudicial error can be found in the charge as to character testimony or in the refusal to give the requested charge on this subject. See Nash v. United States, 2 Cir., 54 F.2d 1006, 1007, certiorari denied 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945; United States v. Kelley, 2 Cir., 105 F.2d 912, 918. Finally, the supplemental charge is challenged. At the request of the jury the judge reread to them his whole charge, and then added: "If either side failed to produce an available witness, the jury may consider that fact." This was scarcely an adequate statement of the law on the subject of failure to call an available witness. See Egan v. United States, 52 App.D.C. 384, 287 F. 958, 969; De Gregorio v. United States, 2 Cir., 7 F.2d 295, 296; Moyer v. United States, 9 Cir., 78 F.2d 624, 630. But the supposition that this simple statement, applicable to either side and wholly vague as to what inference the jury should draw, turned the scales in favor of conviction seems to us wholly unfounded. On the entire charge we find no error which would justify reversal.

We now pass to the consideration of alleged errors in the admission or exclusion of evidence. The most vigorous attack is upon the admission of exhibits 147 and 148. These were respectively computations made by internal revenue agent Gibney with respect to Schenck's 1935 and 1936 returns. Gibney testified that they were made up pursuant to the directions of the United States Attorney. On the first page of each of the exhibits appear "Items of Income" and "Items of Deduction" as reported in dollars upon the taxpayer's return for the appropriate year. The second column of figures shows the same items "As Adjusted" on the basis of Gibney's analysis of figures shown on other exhibits in the case and the inclusion or exclusion thereof in the adjustment column as directed by Mr. Correa. The second page dealt with "Expenses paid and incurred in earning salary and not reimbursed from any source" as reported in the return and the same procedure was followed in making the figures "as adjusted." The exhibits were offered "merely as explanatory of the witness's testimony which will be only as to computations, with the figures already in evidence." In receiving them the court informed the jury that "the original exhibits control, of course," and "these copies are just to be used as a matter of convenience." Each member of the jury was supplied with a copy of exhibits 147 and 148 during Gibney's testimony. Agent Gibney was examined and cross examined at great length with respect to each item appearing on these exhibits and was allowed to refer to the books, vouchers and other exhibits to explain what figures had been used in his computations; but cross examination intended to elicit his opinion as to the legal propriety of including or excluding any item was rigorously ruled out.

It is vehemently argued that the admission of Gibney's computations and the limitation placed upon cross examination of the witness was unfairly prejudicial and amounted to "a subterfuge" to get the jury "to believe that a revenue agent of twenty years' experience was telling them what should and should not be deducted." That the jury could have so thought seems highly improbable. Time and time again Gibney testified that he included or excluded only such items as Mr. Correa directed, and the court informed them that Gibney was allowed, as a matter of convenience, to tell what the other exhibits stated instead of reading them to the jury. It is doubtless true that the inclusion and exclusion of items from the "as adjusted" column of figures were based upon an inarticulate hypothesis that in the opinion of the United States attorney they were not legally permissible deductions, but we do not see that this rendered the exhibits incompetent or required the broadening of Gibney's cross examination. Take for example the item of "capital gains $178,541.92" reported in the 1935 return. Exhibit 147 showed capital gains "as adjusted" $468,004.15. Gibney's explanation of the figures he used to arrive at the ad-

justed amount and that he put this down at Mr. Correa's instruction gave the jury no new information as to the prosecutor's belief that the sums claimed as capital losses on the Hotel and Jockey Club stocks were not permissible deductions. Nor would it justify cross examination to elicit whether Gibney agreed with Mr. Correa's legal conclusion. As to Gibney's computations and what figures he used and from what exhibits he drew them cross examination was unstinted. In a case like this involving voluminous records and complex figures, we believe that the use of computations by an accountant based on hypotheses of facts which the government's evidence, if accepted by the jury, tends to establish, is proper and competent. The appellants urge that such a ruling is contrary to United States v. Johnson, 7 Cir., 123 F.2d 111. We are disposed to think that case distinguishable; if not, we prefer to follow Judge Evans' dissent. Once it was made clear that the computations of the witness merely reflected in terms of figures what the district attorney claimed the evidence proved, it was within the sound discretion of the court, in a complicated case, to permit the use of these exhibits to enable the jury the better to understand the government's claims and the significance of the facts and figures it might find from the evidence to be correct. United States v. Park Avenue Pharmacy, 2 Cir., 56 F.2d 753, 756.

Appellant Schenck contends that his conviction on count one must be reversed because of error in allowing the jury to consider evidence concerning an item of $2,000 of unreported rent. Al Wertheimer testified that during a short period in the summer of 1935 he and his partners conducted a gambling resort in Hollywood "in Mr. Schenck's house" and that Mr. Schenck later "gave him the devil" when he learned of it. The books of the Wertheimer partnership contained an entry "Expenses, Rent—Schenck $2000." This book entry was received in evidence as exhibit 116. We think it was admissible under the statute, 28 U.S.C.A. § 695. The house was owned by Joseph M. Schenck Productions, Inc. in which Schenck held only a one-third interest. For the last five months of the year, however, Schenck himself occupied the house and paid rent to the corporation. The $2,000 was paid in cash to Lou Anger, who frequently acted for Schenck in real estate matters, and there was no direct testimony that Schenck received the money, while Moskowitz testified that he did not. Gibney testified that the $2,000 was included in his computation of income for 1935 at Mr. Correa's direction. A motion to strike out the book entry was denied. We think it was properly refused. Although Al Wertheimer denied on the stand that he had negotiated with Schenck for the house, he had previously sworn in exhibit 107 that he had "contacted Joseph M. Schenck or Lou Anger relative to renting Mr. Schenck's private residence." We believe it was for the jury to decide where the truth lay.

Objections are also made to rulings in the examination of witnesses Marx, Goetz and Luttermoser but it will suffice to say that we think they were substantially correct.

The appellants complain that their constitutional rights were violated by the court's refusal to allow an internal revenue agent named Mulligan to testify. This ruling was based on a regulation of the Treasury Department (31 C.F.R.1938 Supp. 1, 3; D.C. 591 § 3) issued under section 161 of the Revised Statutes, 5 U.S. C.A. § 22. The regulation forbids an employee to testify with respect to information obtained in his official capacity, without the prior approval of high officials of the Treasury Department. It is urged that the regulation is violative of the rights secured to an accused by the Sixth Amendment to the Constitution. See United States v. Burr, C.C.Va., 25 Fed.Cas.No.14692d; In re Hirsch, 2 Cir., 87 F. 1005, affirming C.C., 74 F. 928; Wigmore, Evid. § 2379. But no constitutional question is presented by this record. The only question propounded to Mulligan related to dividends reported in Schenck's return for 1937. As the appellants were acquitted on count 3, the error, if any, in excluding Mulligan's answer did not prejudice them. Exclusion of the testimony of the other three revenue agents, Colin, Jacobs and Yarmis was based not on the regulation but on the ground that it was offered prematurely. As to the order of proof the trial judge has discretion. Thiede v. Utah Territory, 159 U.S. 510, 519, 16 S.Ct. 62, 40 L.Ed. 237.

After examining the lengthy record we are satisfied that the case was fairly tried and correctly submitted to the jury. Accordingly the judgments must be affirmed.