ESTATE OF WILLIAM ELDEN, BARRY ELDEN, EXECUTOR, AND LINDA ELDEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Elden v. Commissioner
Docket No. 19859-85.
United States Tax Court
T.C. Memo 1987-593; 1987 Tax Ct. Memo LEXIS 592; 54 T.C.M. (CCH) 1235; T.C.M. (RIA) 87593; December 3, 1987. William Elden, for the petitioners (at trial). James S. Stanis, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Addition to Tax
Year
Deficiency
[1] Section 6653(b) 1979
$ 41,139
$ 20,570
1980
27,752  13,876  1981
20,613  10,307  In the answer, respondent alternatively claimed additions *593 to tax under the provisions of section 6651 for 1980 and 1981 and section 6653(a) for 1979, 1980, and 1981. As a result of procedural matters described below, the only issue for determination is whether there is an underpayment of tax in each year due to the fraud of William Elden. Respondent does not seek the addition to tax for fraud against Linda Elden. [2]
FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Chicago, Illinois, at the time their petitioner was filed. Substantive Facts
Petitioners were married in 1979, after William Elden's divorce from his prior spouse. Petitioners filed joint Federal income tax returns for 1979, 1980, and 1981. During those years, however, Linda Elden *594 resided in California with one or more of her children from a prior marriage. William Elden (petitioner) was a certified public accountant and a lawyer, specializing in business, corporate, and tax law. He provided bookkeeping, auditing, and tax preparation services for his clients. He also operated a telephone-answering service during the years in issue. On Schedules C attached to petitioners' Forms 1040 for the years in issue, gross receipts from petitioner's businesses were reported as follows: 1979
1980
1981
Certified public
accountant $ 33,928.49 $ 49,370.21 $ 27,308.55
Lawyer
31,611.05   20,307.22   4,252.00   Telephone-answering
111,055.24  117,562.03  59,677.00  service TOTAL             $ 176,594.78
$ 187,239.46
$ 91,237.55
On those same Schedules C, petitioner reported the following travel and entertainment expenses: 1979
1980
1981
Certified public
accountant $ 3,381.34
$ 12,123.27 $ 5,042.33 (including
(including
automobile)
car & truck)
Lawyer
-0-
20,404.45 2,747.69 Telephone-answering
service 880.35    2,724.35 919.00 TOTAL             $ 4,261.69
$ 35,252.07 $ 8,709.02 *595 The above amounts were exclusive of depreciation claimed on one or more automobiles for each year. The above amounts claimed for travel and entertainment and automobile expense for 1980 and 1981 were determined by petitioner's taking 50 percent of the total shown on his ledger for checks written to various credit card companies, hotels, automobile agencies, and gasoline companies. Most of the items so included, however, were personal items, such as expenses of a honeymoon trip to Hawaii, clothing for petitioner's family, and gasoline purchased by petitioner's wife and stepson in California. Although, by reason of his training and experience, petitioner was well aware of the legal prerequisites for deduction of travel and entertainment expenses and substantiation of such expenses, he failed to comply with those requirements. Thus the travel and entertainment expenses were substantially overstated for 1980 and 1981. Analysis of petitioner's bank records for the years in issue reflected unexplained deposits, which respondent determined to be unreported income, as follows: 1979
1980
1981
Certified public
accountant $ 4,289.93 $ 1,808.47
$ 17,698.00
Lawyer
44,361.52  2,980.82  3,730.38   Telephone-answering
service -0-
2,943.92  6,646.16   TOTAL             $ 48,651.45
$ 7,733.21
$ 28,074.54
*596 In the statutory notice of deficiency, respondent made numerous other adjustments to petitioner's income and determined, as a result, the deficiencies set forth above. Respondent has now conceded that petitioner's additional income adjustment attributable to his law practice for 1979 should be reduced by $ 23,487. As a result, respondent has computed the deficiencies and additions to tax due as follows: Addition to Tax
Year
Deficiency
Section 6653(b)
1979
$ 27,804.66
$ 13,902.33
1980
27,752.00  13,876.00  1981
20,613.00  10,307.00  Procedural Facts
By notice served December 11, 1986, the case was set for trial in Chicago, Illinois, on May 11, 1987. Served along with the notice of trial was a Standing Pre-Trial Order directing, among other things, stipulation of documentary and written evidence. The Standing Pre-Trial order also ordered that: Any documents or materials which a party expects to utilize in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties fifteen (15) days before the call of the calendar. The Court may refuse to receive *597 in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown. See Rule 91 [Tax Court Rules of Practice and Procedure]. * * * * * * ORDERED that unless a basis of settlement has been reached, each party shall prepare a Trial Memorandum and submit it directly to the undersigned and to the opposing party no later than fifteen (15) days before the first day of the trial calendar. It is further ORDERED that all witnesses shall be identified in the Trial Memoranda with a brief summary of testimony. Witnesses who are not identified will not be permitted to testify at the trial without leave of the Court upon sufficient showing of cause. Unless otherwise permitted by the Court upon timely request, expert witnesses shall prepare a written report which shall be submitted directly to the undersigned and served upon the opposite party not less than fifteen (15) days before the calendar call. An expert witness' testimony may be excluded for failure to comply with this Order and the provisions of Rule 143(f). * * * On March 23, 1987, respondent served on petitioners a request for admissions *598 setting forth information concerning the bank deposits that were the basis of respondent's determination. Petitioners did not respond to the request for admissions and, as a result, the matters set forth therein were deemed admitted. On March 30, 1987, petitioner filed a motion for continuance of trial and status report, which was denied on April 15, 1987. When the case was called for trial on May 11, 1987, petitioner appeared for himself and for Linda Elden and renewed his motion for continuance. He had not, however, complied with the Standing Pre-Trial Order in that he had not delivered to respondent the documents to be introduced at trial, had not executed an appropriate stipulation and had not filed a trial memorandum; and he had not complied with a subpoena previously served on him. The motion for continuance was denied, and the case was set for recall on May 20, 1987. At the time of recall, petitioner did not appear. Petitioners were declared to be in default by reason of their failure to comply with the orders and rules of the Court, so that the deficiencies would be determined against them. The case was set for trial of the fraud issue on May 21, 1987. Trial commenced *599 on May 21, 1987. Representatives of various credit card companies, a revenue agent, and petitioner testified with respect to the travel and entertainment expenses claimed by petitioner for 1980 and 1981. Petitioner then presented documentary evidence that he had failed to produce prior to trial. The trial was adjourned to November 9, 1987, to allow respondent an opportunity to examine the documentary evidence. On August 27, 1987, the parties prepared a joint status report stating that, based on respondent's review of the documentary evidence presented at the trial on May 21, 1987, respondent would concede that the additional income adjustment attributable to petitioner's law practice for 1979 should be reduced as set forth above. William Elden died on September 2, 1987. By letter dated October 9, 1987, David M. Rubin, an attorney and the son-in-law of William Elden, notified the Court that the heirs of William Elden did not intend to continue the dispute with respondent and that no one representing Mr. Elden's estate would appear at the continuation of trial. The case was called for trial on November 9. Linda Elden did not appear, although she had been in communication with *600 respondent's counsel and had been advised of the status of the case and the necessity for her appearance is she wished to contest respondent's determinations. The record was therefore closed and the case submitted. OPINION In this case, petitioners have the burden of proving that respondent's determination of deficiencies is erroneous, but respondent has the burden of proving an underpayment of tax and that some part of the underpayment was due to fraud. Section 7454(b); Rule 142. [3] As of May 21, 1987, the deficiencies were determined against petitioners by reason of their prior failures to comply with the Court's orders and rules. Rule 123(a). Although subsequently respondent conceded a reduction in petitioners' unreported income for 1979, no other concessions were made by respondent. Petitioners never presented the Court with any evidence that would show any other error in respondent's determinations. The revised determination of deficiencies, therefore, must be sustained. See Rule 149(b). We must still decide, however, whether *601 the evidence supports respondent's determination of additions to tax for fraud. For the years in issue, section 6653(b) imposes an addition to tax equal to 50 percent of an underpayment if any part of such underpayment was due to fraud. The addition attaches to the entire underpayment, even if only a portion of it was due to fraud. Mensik v. Commissioner,328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962). Thus it is necessary that respondent prove the correctness of each adjustment set forth in the statutory notice. Respondent has the burden of proving, by clear and convincing evidence, that an underpayment existed for each year and that some part of the underpayment was due to fraud. This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. A fraudulent underpayment of taxes may result from an overstatement of deductions *602 as well as an understatement of income. Hicks Co. v. Commissioner,56 T.C. 982, 1019 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Neaderland v. Commissioner,52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971). Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). The training and experience of a taxpayer must also be considered in relation to allegations of fraud. See Solomon v. Commissioner,732 F.2d 1459, 1461 (6th Cir. 1984), affg. a Memorandum Opinion of this Court; *603 Iley v. Commissioner,19 T.C. 631, 635 (1952). [4]
Respondent's bank deposits analysis was sufficient to show a pattern of unreported income over the years in issue. See, e.g., Brown v. Commissioner,418 F.2d 574 (9th Cir. 1969), affg. a Memorandum Opinion of this Court. Even after respondent's concession with respect to 1979, the unreported income, standing alone, would result in an underpayment of petitioners' taxes for each of the years in issue. That evidence is sufficient to support an inference of fraud unless overcome by evidence of offsetting deductions. See United States v. Shavin,320 F.2d 308, 311-312 (7th Cir. 1963). In this case, the only evidence concerning deductions was evidence that deductions for travel and entertainment expenses were overstated in 1980 and 1981. Again, considering petitioner's training and experience and his failure to adequately *604 explain the erroneous deductions during his testimony at trial, we conclude that the overstatement of deductions was accompanied by an intent to defraud. See United States v. Schenck,126 F.2d 702, 707 (2d Cir. 1942). Decision will be entered in accordance with respondent's revised computations.
Footnotes
1. Except as otherwise noted, all section references are to the Internal Revenue Code as amended and in effect during the years in issue.↩
2. It is unclear whether respondent claims the alternative additions to tax against Linda Elden. Because they were asserted for the first time in the answer, he bears the burden of proof on those issues. Rule 142(a), Tax Court Rules of Practice and Procedure.↩ No evidence was presented that would satisfy that burden, so the alternative additions to tax are not sustained. 3. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure. ↩
4. See also Scallen v. Commissioner,T.C. Memo. 1987-412; Lomangino v. Commissioner,T.C. Memo. 1987-322; Coleman v. Commissioner,T.C. Memo. 1979-139; Schwartz v. Commissioner,T.C. Memo. 1974-245↩.