## MARSH v. UNITED STATES.

Circuit Court of Appeals, Second Circuit.
November 12, 1928.

No. 112.

Irving K. Baxter, of Utica, N. Y., for appellant.

Richard H. Templeton, U. S. Atty., and Ralph A. Lehr, both of Buffalo, N. Y., for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). It was held in Carroll v. U. S., 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790, that the search of an

automobile by prohibition officers under section 26 of the National Prohibition Law (27 USCA § 40) was independent of the power to arrest and might depend upon that section alone. Gambino v. U. S., 275 U. S. 310, 48 S. Ct. 137, 72 L. Ed. 293, 52 A. L. R. 1381, held that a state trooper was not within the terms of section 26, though whether there was authority elsewhere which authorized a search, it left open. We held in U. S. v. Jankowski (C. C. A.) 28 F.(2d) 800, decided October 29, 1928, that the search before us, made by a trooper, was in fact reasonable; but the point was not raised whether such an officer had any power to search at all, the offense being under a federal law. That is the question we have now to determine.

First, however, we must decide whether the search at bar was reasonable, assuming that the trooper had power to make it, and in that we must have regard to the fourth amendment, which controls, even though the officer gets his authority under the state law. The effect of Gambino v. U. S. is that when, under such circumstances, the federal authorities use the evidence in a federal prosecution, they become subject to all the limitations of the Federal Constitution, regardless of whether state prosecutors might be similarly limited by the State Constitution. Carroll v. U. S. held that the pursuit and overtaking of a motorcar on mere suspicion of its containing liquors was an unreasonable search. We are therefore first to determine whether the trooper overhauled the car for violation of a traffic ordinance. Upon that issue we see no reason to disturb the finding of the District Judge, who alone was charged, as we held in U. S. v. Jankowski, with the duty of deciding the facts on which the competency of the evidence depended. At the same time we must confess to considerable doubt whether, had the matter been before us in the first instance, we should have come to the same conclusion. The circumstances made the trooper's story somewhat doubtful, and an easy complaisance in any plausible tale may deprive defendants of their constitutional rights. This caution we are not, however, ourselves in a position to exercise, because, except in plain cases, we cannot tell from the cold record where the truth lies. For the future we take this occasion to press upon the District Judges that they search the testimony in such cases with care, remembering that the protection of defendants must in most cases rest finally with them.

Assuming, however, that the trooper stopped the car for the violation of a local ordinance, and either saw the liquors or was told of them by the defendant, we have yet to determine whether his seizure of them was lawful. This, as we view it, is a question only of state law, unless we have recourse to some common law of federal criminal procedure, if any there be. Logan v. U. S., 144 U. S. 263, 303, 12 S. Ct. 617, 36 L. Ed. 429; Rosen v. U. S., 245 U. S. 467, 469, 470, 38 S. Ct. 148, 62 L. Ed. 406. We think that the state law authorized what he did, and find it unnecessary to consider the alternative. The search may be regarded as an incident to a lawful arrest, or as having an independent justification. Under the law of New York the person of an arrested offender may be searched, People v. Chiagles, 237 N. Y. 193, 142 N. E. 583, 32 A. L. R. 676; and we see no reason to suppose that the power would not extend to chattels found within his immediate control, as it has been under the fourth amendment, Agnello v. U. S., 269 U. S. 20, 30, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Marron v. U. S., 275 U. S. 192, 199, 48 S. Ct. 74, 72 L. Ed. 231.

The only thing left is whether the trooper had authority by virtue of the state law to arrest the defendant for a federal misdemeanor, of whose commission in his presence he had lawfully obtained the evidence. Section 177 of the New York Code of Criminal Procedure provides that "a peace officer may, without a warrant, arrest a person, * * * for a crime, committed or attempted in his presence," thus including all misdemeanors, whether or not they be breaches of the peace. Whether the power so conferred includes federal crimes has never, so far as we can find, been directly ruled by the state courts. On the other hand, it has been a universal practice of police officers in New York to arrest for federal crimes, regardless of whether they are felonies or misdemeanors, and to bring the offenders before a commissioner. The distinction between the two classes is irrelevant, unless we assume that there is a common law of federal criminal procedure, fixed as of 1789. At any rate, no such distinction has been made, and the practice is strong evidence of the understanding of the state officials as to the meaning of the state law. Moreover, Governor Smith in his veto of the Mullin-Gage Law, unequivocally declared that it was the duty of all local officers to enforce the National Prohibition Law, a declaration relied upon in Gambino v. U. S. In the absence of some holding to the contrary, we see no reason not to accept the practice

and the declaration as evidence of the meaning of the statute.

Moreover, we should be disposed a priori so to understand it. Section 2 of article 6 of the Constitution makes all laws of the United States the supreme law of the land, and the National Prohibition Law is as valid a command within the borders of New York as one of its own statutes. True, the state may not have, and has not, passed any legislation in aid of the Eighteenth Amendment, but from that we do not infer that general words used in her statutes must be interpreted as excepting crimes which are equally crimes, though not forbidden by her express will. We are to assume that she is concerned with the apprehension of offenders against laws of the United States, valid within her borders, though they cannot be prosecuted in her own courts.

Nor can we accede to the argument that Congress in Revised Statutes, § 1014 (18 USCA § 591), has by implication forbidden any arrests without warrant. That section relates only to the practice when a warrant issues; there is no reason for assuming that it goes further than its subject-matter. If we extend it, we must say that there is no means of securing offenders caught in flagrante, a result which would so impair the execution of the laws that it seems to us incredible it should have been intended. It may be that the United States, in respect of such arrests, is limited by the law of the state where the offender may be; but it would be unreasonable to suppose that its purpose was to deny to itself any help that the states may allow. Again, the uniform practice is persuasive. Other considerations forbid any such implication from the powers of arrest given to prohibition officers under section 26 of the National Prohibition Law. The Eighteenth Amendment gave concurrent jurisdiction to the states, and it would be in conflict with its underlying purpose to assume that, so far as the state laws assist in its enforcement, they were to be curtailed by any administrative system which Congress might set up. The purpose of such a system was to secure obedience as far as possible; it cannot be supposed that, within a state which has no independent system of her own, such co-operation as she does extend must be rejected.

The authorities are, however, not very clear. In U. S. v. One Red Truck (D. C.) 6 F.(2d) 412, Judge Morton held that the stoppage of a truck by state officers of Rhode Island was lawful, even though they held it till the federal officers arrived to make the arrest. By implication he seems to have thought that, if the offense had been a felony, the state officers might have arrested the offender, though the crime was under a federal statute. So far as appears under Rhode Island law a state officer's powers to arrest for misdemeanors have not been enlarged, and the decision is inconclusive upon the point now at bar.

The Appellate Division of the Supreme Court of New York for the Second Department, in Westbrook v. N. Y. Sun, 58 App. Div. 562, 69 N. Y. S. 266, seems, however, to have gone further, though indeed only by implication. The action was in libel, and charged the plaintiff, a police officer, with conniving at the escape of the defaulting cashier of a national bank. The complaint was dismissed, because the crime of the cashier was not a felony under the United States statutes, and because section 177 of the New York Code of Criminal Procedure did not authorize the plaintiff to make the arrest. Had it been committed in his presence, apparently the court would have held differently.

The St. Louis Court of Appeals, in Lenski v. O'Brien, 207 Mo. App. 224, 232 S. W. 235, had before it a writ of habeas corpus to release one charged with the possession of liquor contrary to the National Prohibition Law. The petitioner had been arrested by the St. Louis police without warrant, but it did not appear what the Missouri law was, or whether the crime had been committed in the officer's presence. The petitioner was released by a divided court, on the theory that the only statute under which an arrest for a federal crime could be made was Revised Statutes, § 1014. The case is certainly contrary to our view, though the decision may have been justified on other grounds.

Ex parte Jones, 84 Tex. Cr. R. 497, 208 S. W. 525, involved an arrest without warrant for a federal misdemeanor not committed in the presence of the officer. In the absence of any state law authorizing such an arrest, it is hard to see how it could be upheld, and it was not. There is nothing in the decision, so far as we can see, which runs counter to our view.

McMichael v. Culliton (N. J. Sup.) 104 A. 433, a decision by a single judge, again did not involve the questions at bar. The arrest was for the violation of a federal statute, not shown to constitute a felony, and not, as we gather, committed in the officer's presence. Nevertheless, part of the discussion certainly

implied that Revised Statutes, § 1014, was the exclusive authority for any arrest.

These, so far as we can find, are the only cases in which the question has arisen, and it will be seen that the result is uncertain. As we have said, the decision of the Appellate Division in New York, and possibly that of Judge Morton, lends color to our holding here; at worst, we cannot see that there is any clear body of authority to the contrary. For the reasons we have already given, we think the arrest was authorized, and that the seizure, which went along with it, was reasonable and lawful.

Judgment of conviction affirmed.