# Authority of Florida Police Officers to Make Arrests on the Basis of FBI Pick-Up Notices

*The authority of a Florida police officer to make a warrantless arrest for an alleged violation of federal law depends on state law and cannot be based merely on the existence of an FBI pick-up notice.*

January 28, 1953

MEMORANDUM OPINION FOR THE DIRECTOR
FEDERAL BUREAU OF INVESTIGATION

With your memorandum of October 9, 1952, addressed to the Deputy Attorney General and referred to this office for reply, you sent a copy of an opinion given by Attorney General Richard W. Ervin of Florida to the Florida Peace Officers' Association (dated September 15, 1952) containing answers to several questions regarding the authority to make arrests by municipal police officers of Florida. The portion concerning the federal government and this Department came under the heading of question 4. The question read:

> 4. What authority, if any, does a municipal police officer have to make arrests upon the basis of pick-up notices sent out by other officers?

The answer took the view that under the Florida statutes a municipal police officer (regarded as a peace officer, see page 2 of the opinion), who receives a pick-up notice from another peace officer of Florida showing that a named person is wanted for a felony under the laws of Florida, may accept the notice as reasonable ground to believe that a felony has been committed and reasonable ground to believe that the wanted person committed it, and has authority to arrest the wanted person. On the other hand, without assigning any reason the answer assumed a distinction in the case of pick-up notices received from federal officers and further assumed that a municipal police officer has only the common law right of a private citizen to arrest for a federal felony. If he should make an arrest, it was stated the municipal police officer acts at his peril (subject to liabilities indicated in the answer to question 5) when he arrests for a federal felony on the strength of the federal pick-up notice, even if it is sufficient to give him reasonable ground to believe that a federal felony has been committed and that the person to be arrested has committed it, because, as in the case of arrest by a private citizen, reasonable ground to believe that a federal felony has been committed will not suffice; a federal felony must actually have been committed and the municipal police officer must have reasonable ground to believe that the person to be arrested committed it. The answer further stated that a municipal police officer acting as a private citizen had no authority to arrest for a federal misdemeanor upon the basis of a pick-up notice.

You have pointed out that substantially all of the requests for pick-ups made by the FBI are in cases where federal warrants are outstanding and that the opinion does not distinguish between the situation where a warrant is outstanding and the situation where one has not been issued.

We think that the Florida opinion on this subject is unfortunate in this and several other respects. In testing the lawfulness of arrest, if we were to assume that an arrest by a state or municipal police officer pursuant to an FBI pick-up notice is an arrest without a warrant, there is no basis in federal or state law at the present time for distinguishing between the conduct of a state or local police officer when he arrests without a warrant for a state felony or a federal felony. The United States Supreme Court dealt squarely with the issue in *United States v. Di Re*, 332 U.S. 581 (1948). Speaking through Mr. Justice Jackson, the Court said:

> We believe, however, that in absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity. By one of the earliest acts of Congress, the principle of which is still retained, the arrest by judicial process for a federal offense must be "agreeably to the usual mode of process against offenders in such state."[8] There is no reason to believe that state law is not an equally appropriate standard by which to test arrests without warrant, except in those cases where Congress has enacted a federal rule. Indeed the enactment of a federal rule in some specific cases seems to imply the absence of any general federal law of arrest.
>
> . . . No act of Congress lays down a general federal rule for arrest without warrant for federal offenses. None purports to supersede state law. And none applies to this arrest which, while for a federal offense, was made by a state officer accompanied by federal officers who had no power of arrest. Therefore the New York statute provides the standard by which this arrest must stand or fall.

*Id.* at 589–90, 591 (footnote 8 below is from page 589 of the reported opinion).

The test which the Court applied (in this arrest by a state police officer for a federal war rationing violation) was section 177 of the New York Code of Criminal Procedure, which is a statute cast in general terms providing the

---

[8] The Act of September 24, 1789 (Ch. 20, § 33, 1 Stat. 91), concerning arrest with warrant, provided: "That for any crime or offence against the United States, the offender may, by any justice or judge of the United States, or by any justice of the peace, or other magistrate of any of the United States where he may be found agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested, and imprisoned or bailed, as the case may be, for trial before such court of the United States as by this act has cognizance of the offense." This provision has remained substantially similar to this day. 18 U.S.C. § 591. *See also* 1 Op. Att'y. Gen. 85, 86.

authority of a peace officer to arrest without warrant in three types of cases. The statute resembles section 901.15, Florida Statutes, 1951 (which is quoted at length at a later point in this memorandum), except that the Florida statute is somewhat broader in its coverage. It is important for our purposes to observe that, although the arrest and subsequent search in *Di Re* failed because the arresting officer had no information which would lead him to believe that either a felony or misdemeanor had been committed by Di Re, the action of the arresting officer was tested by New York's statutes on arrest applicable to peace officers and not on any theory that the state peace officer was acting as a private citizen or that there was any special or different rule when he acted to arrest for a federal offense.

*Di Re* was followed shortly by *Johnson v. United States*, 333 U.S. 10 (1948), in which an arrest on a federal narcotics violation, effected without a warrant by federal narcotics agents and a city police officer, was tested by the law of the State of Washington applicable to state officers, the Court holding again that state law determines the validity of arrest without warrant.

Still later, the contemporaneous state of the law of arrest, as it was confirmed in *Di Re*, was described by Judge Learned Hand in *United States v. Coplon* as follows:

> In the absence of some controlling federal law the validity of an arrest for a federal crime depends upon whether an arrest for a state crime would have been valid under the state law, if made in the same circumstances. Whatever the doubts which might have existed as to this before 1948, they were laid in that year. At common law a private person, as distinct from a peace officer, had the power to arrest without warrant for a felony, committed in his presence, and for one, actually committed in the past, if he had reasonable ground to suppose that it had been committed by the person whom he arrested. A "constable" or other "conservator of the peace" had all the powers of arrest without warrant of a private person, and in addition the power to arrest for felony, although no felony had actually been committed, if he had reasonable ground to suppose that the person arrested had committed the felony. That was the only distinction between their powers and those of a private person. The law of New York is nearly, if not quite, in accord with this.

185 F.2d 629, 633–34 (2d Cir. 1951) (footnotes omitted).

It might be observed that the law of Florida as codified in section 901.15, Florida Statutes, 1951, is even more nearly in accord with the common law, as noted in *Dorsey v. United States*, 174 F.2d 899 (5th Cir. 1949). In this case, cited by the Florida Attorney General's opinion, the Court acknowledged the rule of *Di Re*; but the point of *Dorsey* is that investigators of the federal Office of Price Administration who the court said were not arresting officers, but who nevertheless made an

arrest without a warrant for a federal offense, had no greater rights than private persons in effecting the arrest. In Florida, though the statutes make no provision for arrest by a private person, the Court held he may nevertheless act under the common law rule to arrest for a felony committed in his presence. This was the situation in the case and the arrest was sustained. The opinion is entirely in accord with the views laid down by the Supreme Court and applied in the other circuits, as hereinafter noted. But the holding of the *Dorsey* case does not deal with the powers of arresting officers, and in our view is misapplied if it is used, as it appears to be used in the Florida Attorney General's opinion, to correlate the powers of arresting officers, state or federal, to that of private citizens in making arrests without warrants for federal felonies.

Illustrating that the Supreme Court opinions in *Di Re* and *Johnson* did not establish "new" law, but confirmed a long-accepted practice, is *Cline v. United States*, in which the court held that "[t]he procedure for making arrests which obtains under the state practice is applicable to arrests made for crimes against the United States," 9 F.2d 621, 621 (9th Cir. 1925) (citing *Prize Ship and Crew—How To Be Disposed Of*, 1 Op. Att'y. Gen. 85, 86 (1798)), and a group of early federal cases. Other cases in other circuits or districts which have followed and applied the *Di Re* case are *Pon v. United States*, 168 F.2d 373 (1st Cir. 1948), a narcotics case, holding the validity of arrest to be determined by the law of Massachusetts under which an arrest by an officer without a warrant is authorized if the officer has reasonable grounds to believe that a felony was committed by the defendant; *Brubaker v. United States*, 183 F.2d 894 (6th Cir. 1950), a Dyer Act violation, holding the legality of the arrest to be governed by the law of Tennessee, which provides that an officer may without a warrant arrest a person when a felony has in fact been committed and the officer has reasonable cause for believing the person arrested committed the felony; *United States v. Horton*, 86 F. Supp. 92 (W.D. Mich. 1949), upholding an arrest without a warrant by city police for a federal narcotics violation as tested by the law of Michigan, the pertinent of which are practically identical with subsection (2) and (3) of section 901.15, Florida Statutes, 1951; and *United States v. Guller*, 101 F. Supp. 176 (E.D. Pa. 1951), testing an arrest in a narcotics case by the Pennsylvania law which accords with the common law rules.

In the *Di Re* and subsequent cases involving arrests for federal offenses by state officers, apparently it was accepted without argument, so far as the opinions show, that a state officer may arrest for federal offenses. The issue was the standard to be applied. But the matter assumed had not gone without argument, earlier, and the leading case is probably *Marsh v. United States*, 29 F.2d 172 (2d Cir. 1928). In an opinion by Judge Learned Hand, the court held that a state police officer had authority to arrest for violation of federal law. The court pointed out that the state statute (section 177 of the New York Code of Criminal Procedure, the same statute later applied in *Di Re*, which provides that a peace officer may without a warrant arrest a person for a crime committed or attempted in his presence) had been

universally used by New York police officers in arresting for federal crimes regardless of whether they were felonies or misdemeanors. But the court went on to say:

> Moreover, we should be disposed a priori so to understand it. Section 2 of article 6 of the Constitution makes all laws of the United States the supreme law of the land, and the National Prohibition Law is as valid a command within the borders of New York as one of its own statutes. True, the state may not have, and has not, passed any legislation in aid of the Eighteenth Amendment, but from that we do not infer that general words used in her statutes must be interpreted as excepting crimes which are equally crimes, though not forbidden by her express will. We are to assume that she is concerned with the apprehension of offenders against laws of the United States, valid within her border, though they cannot be prosecuted in her own courts.

*Marsh*, 29 F.2d at 174.

The court went on further to reject the argument that Congress in enacting section 33 of the Judiciary Act of 1789, providing for arrest and commitment or bail of offenders against federal law by state officials "agreeably to the usual mode of process against offenders in such state," had by implication forbidden any state arrests for federal offenses without warrant. Act of Sept. 24, 1789, ch. 20, § 33, 1 Stat. 73, 91, *later codified as amended at* Rev. Stat. § 1014 (2d ed. 1878), 18 Stat. pt. 1, at 189 (repl. vol.), *and at* 18 U.S.C. § 591 (1925–26), *now* 18 U.S.C. § 3041 (1952). On the contrary, said the court anticipating what was later held in *Di Re*, it would be unreasonable to suppose that it had been the purpose of the Congress to deny to the United States any help that the states may allow. *Marsh* was followed in *United States v. One Packard Truck*, 55 F.2d 882 (2d Cir. 1932).

In the light of the well-established body of law and practice reviewed here, it would seem to us that there is no justification, and it is contrary to the precedents, to read section 901.15, Florida Statutes, 1951, particularly subsections (3) and (4), as purporting to exclude arrests for federal offenses. The Florida statute is cast in general terms like the New York, Michigan, Tennessee, Massachusetts, and other statutes construed by the courts, and its language and derivation afford no basis for the artificial distinction. Unfortunately in this regard the opinion of the Florida Attorney General in dealing with question 4 paraphrases rather than quotes the Florida statute, and in so doing inserts the word "Florida" in several places where it does not appear in the statute, thereby creating an erroneous impression. For your benefit there is set out verbatim the provisions of section 901.15:

> *When arrest by officer without warrant is lawful.*—A peace officer may without warrant arrest a person:

(1) When the person to be arrested has committed a felony or misdemeanor or violation of a municipal ordinance in his presence. In the case of such arrest for a misdemeanor or violation of a municipal ordinance, the arrest shall be made immediately or on fresh pursuit.

(2) When a felony has in fact been committed, and he has reasonable ground to believe that the person to be arrested has committed it.

(3) When he has reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it.

(4) When a warrant has been issued charging any criminal offense and has been placed in the hands of any peace officer for execution.

These are, as said of the comparable New York statute by Judge Learned Hand, "general words used in her statutes," *Marsh*, 29 F.2d at 174, from which it is not to be inferred that there are excepted crimes which are equally crimes by the supreme law of the land though not forbidden expressly by Florida law. The notion that federal criminal law may be "foreign" to the states was laid to rest by the Supreme Court in *Testa v. Katt*, 330 U.S. 386 (1947), where the Court said:

It cannot be assumed, the supremacy clause considered, that the responsibilities of a state to enforce the laws of a sister state are identical with its responsibilities to enforce federal laws. Such an assumption represents an erroneous evaluation of the statutes of Congress and the prior decisions of this Court in their historic setting. Those decisions establish that state courts do not bear the same relation to the United States that they do to foreign countries. The first Congress that convened after the Constitution was adopted conferred jurisdiction upon the state courts to enforce important federal civil laws, and succeeding Congresses conferred on the states jurisdiction over federal crimes and actions for penalties and forfeitures.

Enforcement of federal laws by state courts did not go unchallenged. Violent public controversies existed throughout the first part of the Nineteenth Century until the 1860's concerning the extent of the constitutional supremacy of the Federal Government. During that period there were instances in which this Court and state courts broadly questioned the power and duty of state courts to exercise their jurisdiction to enforce United States civil and penal statutes or

the power of the Federal Government to require them to do so. But after the fundamental issues over the extent of federal supremacy had been resolved by war, this Court took occasion in 1876 to review the phase of the controversy concerning the relationship of state courts to the Federal Government. *Claflin v. Houseman*, 93 U.S. 130. The opinion of a unanimous court in that case was strongly buttressed by historic references and persuasive reasoning. It repudiated the assumption that federal laws can be considered by the states as though they were laws emanating from a foreign sovereign. Its teaching is that the Constitution and the laws passed pursuant to it are the supreme laws of the land, binding alike upon states, courts, and the people, "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." It asserted that the obligation of states to enforce these federal laws is not lessened by reason of the form in which they are cast or the remedy which they provide.

*Id.* at 389–91 (footnotes omitted).

It would therefore seem to us that the Attorney General of Florida should have no difficulty in regarding subsection (3) of section 901.15 as ample authority for a municipal police officer to arrest without a warrant for a federal felony on a pick-up notice emanating from a federal officer. As the Attorney General of Florida has already indicated to be the case for state pick-up notices in state felonies, so the federal pick-up notice can equally afford the arresting officer reasonable ground to believe that a federal felony has been committed and that the wanted person has committed it. Reliance on hearsay, and on reasonableness of belief or reasonable or probable cause, in making arrests is supported in the cases, such as *United States v. Bianco*, 189 F.2d 716 (3d Cir. 1951); *United States v. Heitner*, 149 F.2d 105 (2d Cir. 1945), *cert. denied sub nom. Cryne v. United States*, 326 U.S. 727, *reh'g denied*, 326 U.S. 809; *Brinegar v. United States*, 338 U.S. 160 (1949).

To the extent that the FBI pick-up notice advises with particularity that a warrant of arrest has been placed in the hands of a federal marshal or deputy (who, it will be remembered, enjoys the corresponding powers of a state sheriff, 28 U.S.C. § 549, and is regarded as a peace officer, *In re Neagle*, 135 U.S. 1, 68–69 (1890)), or any other peace officer, it would also seem that the Attorney General of Florida could with propriety advise that subsection (4) of section 901.15, Florida Statutes, 1951, might also provide the basis for a Florida peace officer arresting the wanted person in reliance on the pick-up notice, whether the offense charged is a felony or misdemeanor (since the express wording of subsection (4) covers "any criminal offense"), without the Florida peace officer having the warrant in his possession. Rule 4(c)(1) of the Federal Rules of Criminal Procedure (1952) permits the federal criminal warrant to be executed "by a marshal or by some other officer authorized by law"; under Rule 4(c)(3), the officer need not have a warrant in his possession at the time of the arrest; and, under Rule 4(c)(2) and Rule 9(c)(1), the warrant may

be executed anywhere in the United States regardless of the district in which it issued. *See, e.g.*, *United States v. Donnelly*, 179 F. 2d 227 (7th Cir. 1950) (sustaining an arrest in Missouri made by FBI agents and Missouri police as the result of a teletype message from Chicago after issuance of a commissioner's warrant for the defendant's arrest in Chicago), *overruled on other grounds*, *United States v. Burke*, 781 F.3d 1234 (7th Cir. 1985).

In view of the doubt that may have been created by the portion of the Florida Attorney General's opinion we have discussed, it would be helpful if reconsideration of that portion of the opinion could be had.

While the problem, as it affects arrests for federal offenses, is one of interpretation and application of state law, it has nevertheless been made so by the action of Congress and the judicial extension of section 33 of the Judiciary Act of 1789 (18 U.S.C. § 3041). The correct application of the appropriate state law in the federal cases is therefore not only a matter of federal interest but may involve, in the legal sense, a federal question, *cf. Dice v. Akron, Canton and Youngstown R.R. Co.*, 342 U.S. 359 (1952); *Davis v. Wechsler*, 263 U.S. 22 (1923).

Since the oversight in interpretation ought to be susceptible of clarification by a further interpretation, it would be most unfortunate if, as is intimated in your memorandum, the matter would have to be rectified by state legislation. A request for, or enactment of, legislation on this point in one state might unnecessarily give rise to confusion and doubts in the other judicial districts of the United States where, so far as we know, no similar difficulty has been encountered under comparable state law.

No doubt you have available suitable means of raising the question with Attorney General Ervin, in order to bring about the desired correction. We might add that this office has in the past enjoyed good relationships with his office on a number of matters, and we would be quite willing to do whatever we can to assist.

J. LEE RANKIN
*Assistant Attorney General*
*Executive Adjudications Division*
