**UNITED STATES of America,
Appellee,**

**v.**

**Petronio BURGOS, Appellant.**

**No. 309, Docket 25460.**

United States Court of Appeals
Second Circuit.

Argued May 8, 1959.

Decided Aug. 27, 1959.

Daniel H. Greenberg, New York City, for appellant.

Arthur H. Christy, U. S. Atty., Southern District of New York, New York City (Stephen E. Kaufman, Mark F. Hughes, Jr., Asst. U. S. Attys., New York City, of counsel), for appellee.

Before CLARK, Chief Judge, WATERMAN, Circuit Judge, and EDELSTEIN, District Judge.

WATERMAN, Circuit Judge.

Defendant was indicted in the Southern District of New York on two felony counts. The first charged him with being in violation of 8 U.S.C.A. § 1326 as an alien illegally in the United States after having been deported, the second with illegal possession of cocaine in violation of 21 U.S.C.A. §§ 173 and 174. Defendant pleaded not guilty to both counts and waived a trial by jury. Counts one and two were severed, and trial proceeded upon count two, the narcotics count, alone. Prior to trial defendant moved to suppress as evidence narcotics taken from his hotel rooms. The district court reserved judgment upon this pre-trial motion and proceeded to trial. After all the evidence upon both of these issues was closed the district court held that the narcotics were not the fruits of an illegal search and seizure and that defendant was guilty of violating 21 U.S.C.A. §§ 173 and 174, as charged. Defendant then changed his plea of not guilty to the immigration charge to one of guilty and was sentenced by the district court to serve two years thereon concurrently with a sentence of ten years imposed

under count two. This appeal is from the conviction and sentence on count two.

■ According to the evidence taken most favorably for the Government, see United States v. Brown, 2 Cir., 1956, 236 F.2d 403, 405, the pertinent facts follow. After the Immigration and Naturalization Service deported defendant in 1953, various bureaus of the Federal Government, Narcotics, Immigration and Customs, received anonymous information in August of 1957 that he had illegally re-entered the country and was operating here as a large-scale trafficker in narcotics. Following several unsuccessful attempts to locate him, Customs Agents McVeigh, Murphy and Cozzi learned on June 25, 1958 from a restaurant proprietress in New York City that a person resembling defendant might be living at the nearby Greystone Hotel. At the hotel the agents discovered that a man was registered there under the name of Arturo Villado, a name often used by defendant as an alias, and hotel employees identified a photograph of defendant as the occupant of Room 1230. A chambermaid and the head housekeeper went into Room 1230 on a pretext and left the door open. Agent Cozzi then walked past the room and looked in. Seeing and recognizing defendant he, together with the other agents, then entered the room through the open door. After identifying themselves they placed defendant under arrest for "illegal entry." The time was about 3:30 P.M. Defendant insisted that he was Arturo Villado, a citizen of the United States, and he produced a spurious birth certificate stating that he was born in Tampa, Florida. Following a search of his person defendant was handcuffed. The agents were not armed with warrants of any sort when they made the arrest.

Agent Cozzi testified that shortly after the agents made the arrest the following took place:

"I said to [defendant], 'Come on, Russo. [Another well-known alias used by Burgos] From the way you have been operating, you must have some stuff in the room. We are going to look over the room for some Immigration documents and stuff like that, so if you have any narcotics, tell me about it right now.'

"So he hemmed and hawed for a while, and then he said, 'Come on with me in the next room.' He takes me in the next room, which was his bedroom—

"Q. Is that 1231? A. Yes. Murphy was in the room at the time, and he walked over to the dresser, he moved a book, and from beneath a scarf on top of the dresser, he took out a little glassine envelope, and a little card, and he says, 'This is all I got.' He says, 'A little cocaine for my own use, I sniff it,' and he made motions to me."

The envelope contained 15 grains of cocaine. All conversation was conducted in a normal tone of voice, unaccompanied by any shouting, wrangling, or yelling. And the defendant conceded that there was no physical violence done him or threats of physical violence made.

Defendant continued to deny that he was an alien and that he had any other drugs in his possession. But after the glassine envelope was turned over he first offered the agents $1000, then $2500, and finally the contents of one of his suitcases, $2410 and jewelry, to release him. He insisted that he was "only a user" and that if the agents let him go they would never see him in New York again. Following the discovery of the glassine envelope on the dresser the agents made a thorough search of the two-room suite, 1230–1231, and in Room 1230 they found a locked suitcase. Eventually the defendant produced the key to it, and when it was opened a bottle containing 5 ounces, 295 grains of cocaine was uncovered.

The cocaine in the envelope and bottle was seized by the officers; it was offered at trial by the Government and was admitted into evidence. Defendant's main contention is that the district court erred in refusing to suppress the evidence of

this cocaine. He argues that the glassine envelope was not voluntarily turned over to the agents; and that as the original arrest was made by the agents without a warrant they were but civilians empowered to arrest for felony, though not empowered to make any search of the hotel room. The district court found that the defendant voluntarily turned over the glassine envelope containing cocaine, possession of which was a federal crime; and since the agents had made a valid arrest which could be extended to cover the possession of the envelope, the agents were lawfully empowered, as an incident of a statutory narcotics arrest, to make the search which unearthed the remaining cocaine. Hence it held that with respect to the seizure of the drug there was no violation of constitutional rights. We agree with the reasoning and conclusion of the district court. Therefore we do not reach the question of whether a civilian arrest without a warrant, lawful under Section 183 of the New York Code of Criminal Procedure,[1] would entitle federal agents effecting such an arrest for a felonious violation of the immigration laws to search defendant's rooms incident to that arrest.

The district court accepted the Government's evidence that the glassine envelope was handed to the agents. Clearly it did not err in doing so. But the defendant maintains that even though the facts may be as the Government's witnesses stated them to be, nevertheless the search and seizure was illegal because, under the circumstances, he could not have waived his constitutional rights. It is his contention that handcuffed as he was in the presence of three armed officers, all he really did was to involuntarily submit to their requests. We have great difficulty in visualizing the handing over of the envelope as an act of submission, for at the same time defendant was maintaining his pose that he was a citizen of the United States and was untruthfully insisting that he had no more drugs in his possession. Rather than characterizing defendant's behavior as submission, it is far more plausible to interpret it as an attempt to ingratiate so as to convince the agents that he was only a "small-time user" and might well be released in exchange for a bribe. We conclude that the district court was completely justified in holding that defendant's act was a voluntary one. Compare United States v. Perez, 2 Cir., 1957, 242 F.2d 867, certiorari denied, 1957, 354 U.S. 941, 77 S.Ct. 1405, 1 L.Ed.2d 1539; United States v. Adelman, 2 Cir., 1939, 107 F.2d 497; and United States v. Bianco, 2 Cir., 1938, 96 F.2d 97. And see United States v. MacLeod, 7 Cir., 1953, 207 F.2d 853.

The validity of an arrest without a warrant by a federal officer must, in the absence of a controlling federal statute, be determined by the law of the state where the arrest took place. Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; United States v. Di Re, 1948, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210. Defendant was committing a felony by his presence in this country, 8 U.S.C.A. § 1326. Consequently, the Customs Agents, as private persons, could validly arrest him under Section 183 of the New York Criminal Code. In the absence of a statute limiting a federal officer's power to arrest without a warrant, see United States v. Coplon, 2 Cir., 1950, 185 F.2d 629, certiorari denied, 1952, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688, that officer surely has the same powers of arrest as a private person. United States v. Lindenfeld, 2 Cir., 1944, 142 F.2d 829, certiorari denied, 1944, 323 U.S. 761, 65 S.Ct. 89, 89 L.Ed. 609; United States v. Park Avenue Pharmacy, 2 Cir., 1932, 56 F.2d 753; Brady v. United States, 6 Cir., 1924, 300 F. 540, certiorari denied, 1924, 266 U.S. 620, 45 S.Ct. 99, 69 L.Ed. 472. Moreover,

---

1. § 183 of the New York Code of Criminal Procedure reads as follows:
    "§ 183. In what cases allowed
    "A private person may arrest another,

"1. For a crime, committed or attempted in his presence;
"2. When the person arrested has committed a felony, although not in his presence."

a Customs Agent's power to make a civilian arrest without a warrant permissible by state law when a crime has been committed outside the area of narcotics violations is not curtailed by § 104(a) of Title I of the Narcotic Control Act of 1956, 26 U.S.C. § 7607.[2] Section 7607 purposed to eliminate, insofar as narcotics violations were involved, one of the common law requirements imposed upon civilian arrests—the requirement that a felony has in fact been committed. Compare Restatement of Torts (1934) § 119 with § 120; see Prosser on Torts § 26 (1941). Since defendant here was legally in the custody of the agents, it would be overly technical to require that, after the glassine envelope was given to them, they had to go through the ritual of re-arresting defendant, already arrested by them as a felon, on an additional narcotics felony charge. Defendant's behavior indicates that he was well aware of what was going on, and that after he produced the envelope he was being held for possessing narcotics as well as for "illegal entry."

■ Once the agents acquired the glassine envelope containing the 15 grains of cocaine and thereby had "reasonable grounds" to detain defendant under the statutory power given them in 26 U.S.C. § 7607, they were lawfully entitled as an incident of a valid arrest to conduct as narcotics agents the search of defendant's rooms which turned up the bottle containing the 5 ounces, 295 grains of cocaine. United States v. Volkell, 2 Cir., 1958, 251 F.2d 333, certiorari denied, 1958, 356 U.S. 962, 78 S.Ct. 1000, 2 L.Ed.2d 1068; cf. Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

■ Defendant's other contention does not deserve extensive discussion. He claims he was seriously prejudiced by an alleged material variance between the bill of particulars of proposed proof provided him by the Government and the Government's actual proof with respect to where the cocaine was possessed by him. The fact is that in response to defendant's motion for the particulars the Government stated that defendant was being prosecuted because he possessed 5 ounces and 310 grains of cocaine in Rooms 1230 and 1231, Greystone Hotel, 91st Street and Broadway, New York City, on June 25, 1958 in the afternoon, and that the cocaine was in a suitcase on the floor of Room 1230. And at the trial the Government proved exactly that, except, as has been noted heretofore in our discussion, that 15 grains of the total of 5 ounces and 310 grains (2710 grains) possessed by defendant were in an envelope beneath a scarf on top of his dresser.

■ No substantial right of defendant was prejudicially affected by this variance. Though defendant objected when evidence of the envelope was first introduced, and moved "to strike out anything relating to a separate package not according to the bill of particulars," he made no application for a continuance when his motion was denied. And since defendant at trial flatly denied ever seeing the glassine envelope until it was shown to him in his room by the agents, we do not see how he could properly

2. § 7607 of 26 U.S.C. reads as follows:
"7607. Additional authority for bureau of narcotics and bureau of customs
"The Commissioner, Deputy Commissioner, Assistant to the Commissioner, and agents, of the Bureau of Narcotics of the Department of the Treasury, and officers of the customs (as defined in section 401(1) of the Tariff Act of 1930, as amended; 19 U.S.C., sec. 1401(1)), may—
"(1) carry firearms, execute and serve search warrants, * * * and serve subpenas and summonses issued under the authority of the United States, and
"(2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs (as defined in section 4731) or marihuana (as defined in section 4761) where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."

have presented a different defense if the bill of particulars had been more minutely exact. Neal v. United States, 1950, 87 U.S.App.D.C. 377, 185 F.2d 441 certiorari denied, 1951, 340 U.S. 937, 71 S.Ct. 482, 95 L.Ed. 676. Trials need not be conducted today "with the formality of the code duello," United States v. Costello, 2 Cir., 1955, 221 F.2d 668, 675, affirmed, 1955, 350 U.S. 359, 1956, 76 S.Ct. 406, 100 L.Ed. 397, rehearing denied 351 U.S. 904, 76 S.Ct. 692, 100 L.Ed. 1440, and where a minute variance such as this does occur, and its occurrence does not affect substantial rights, it must be disregarded. Fed.R.Crim.P. 52(a), 18 U.S.C.; United States v. Costello, supra.

Affirmed.