**UNITED STATES of America,**

v.

**HOU WAN LEE, Defendant.**

**No. 66 Cr. 627.**

United States District Court
S. D. New York.
Feb. 24, 1967.

Robert M. Morgenthau, U. S. Atty., by Paul L. Perito, Asst. U. S. Atty., New York City, for plaintiff.

I. Jules Rosen, New York City, for defendant.

MANSFIELD, District Judge.

Defendant has moved to suppress certain evidence seized by United States Customs agents from his store[1] on September 17, 1965 after he had been arrested and taken into custody for knowingly facilitating the smuggling of contraband jade into the United States and for knowingly receiving such contraband in violation of Title 18 U.S.C. § 545.[2] The motion is granted to the extent indicated.

The background of the case is as follows. On August 11, 1965 a ship carrying 18 cases of furniture and slippers consigned to the defendant arrived in New York from Hong Kong. Acting on confidential information received from Hong Kong to the effect that the furniture contained secreted jade, which is contraband,[3] customs officials on August 16 ordered the merchandise into the Customs House Appraiser Stores for inspection pursuant to 19 U.S.C. §§ 1499 and 1502(c), et seq. An examination of two rosewood cabinets which were part

---

1. Defendant has also moved to suppress certain statements which he made subsequent to his being taken into custody, on the ground that he was not appropriately advised of his Constitutional rights at that time. The Court, however, finds that he was so advised and, therefore, denies that portion of the motion without prejudice to defendant's challenging in the future the admissibility of the statements on some other ground.

2. "§ 545. *Smuggling goods into the United States*

"Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts, to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or

"Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—

"Shall be fined not more than $10,-000 or imprisoned not more than five years, or both.

"Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section. * * *"

Defendant was indicted for violating 18 U.S.C. § 545 and 18 U.S.C. § 371 (conspiracy).

3. Importation of jade into the United States is prohibited by 31 C.F.R. § 500.204(a) (2) and (3).

of the shipment by means of an inspecto-scope (a type of X-ray machine) revealed false compartments. After removing the panels and discovering a number of contraband jade plaques, customs agents smeared some of the inside shelves and the panels of the cabinets with paste that would fluoresce under ultra-violet light. The cabinets were then restored to normal appearance, and the merchandise was subsequently released and was delivered on September 16, 1965 to defendant's store at 439 Third Avenue, New York. Customs agents followed the delivery truck, observed the defendant unpack some of the goods and saw him move one of the cabinets to the rear of the store. The agents maintained surveillance of the store and of the defendant throughout the day and evening and at about 10:30 P.M. observed him take the second cabinet to the rear of the store where he appeared to work over it vigorously. However, they could not see him actually remove any jade. At 12:30 A.M. the agents stopped the defendant as he was about to leave the store, arrested him, advised him of his Constitutional rights, and thereupon searched the premises, confiscating, among other things, the jade pieces, which had been removed from the secret compartments of the two rosewood cabinets and a diagram of one of the jade pieces which had been discovered in defendant's card case. The agents also noted the presence of fluorescent powder on the defendant's hands. The seized property is the subject of this motion which is made pursuant to Rule 41(e), F.R.Crim.Proc.

■■ Defendant's initial contention is that there was sufficient justification early in the day for the agents to obtain a search warrant and that their failure to do so rendered the search illegal. Prior to 10:40 P.M., however, the agents knew only that the defendant had received the cabinets which contained the jade. Except for the fact that the shipment originated with his father in Hong Kong, there was no other indication that he knew of the jade hidden in secret compartments of the furniture, and there is no presumption that possession of contraband is unlawful unless such knowledge is established.[4] United States v. Tijeriva, 138 F.Supp. 759 (S.D.Tex.1956). Therefore, it was not until 10:40 P.M. when the agents observed the defendant working over the chests that there was sufficient probable cause for the issuance of a warrant. At that late hour, it was not unreasonable for the agents to proceed as they did. Furthermore, the search was incident to an arrest and the validity of the search, therefore, depends on the validity of the arrest and the reasonableness of the search and not on the practicability of obtaining a search warrant. See United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

■ Since the search, in the absence of a warrant, was legally justifiable only if it was conducted as incident to a lawful arrest, the principal question to be resolved is whether the customs agents had authority to arrest the defendant without a warrant. After thoroughly reviewing the authorities, this Court must regretfully answer that question in the negative. The only federal statute expressly granting such officers authority to make an arrest is 26 U.S.C. § 7607, which deals only with arrests for narcotics and marihuana violations. The Government, however, contends that the situation is within the scope of Title 19 U.S.C. § 1581(f) which provides:

"It shall be the duty of the several officers of the customs to seize and secure any vessel, vehicle, or merchandise which shall become liable to seizure, and to arrest any person who shall become liable to arrest, by virtue of any law respecting the revenue, as well without as within their respective districts, and to use all necessary force to seize or arrest the same."

The foregoing section does not authorize customs officers to make an arrest.

4. Title 18 U.S.C. § 545 provides that possession of smuggled goods is presumed to be unlawful.

It is limited to imposing upon them the duty to arrest a person only where a law respecting the revenue authorizes such arrest. There does not appear to be any such statute authorizing an arrest to be made in this case. While the Court in United States v. Collins, 349 F.2d 863 (2d Cir. 1965), cert. denied, 383 U.S. 960, 86 S.Ct. 1228, 16 L.Ed.2d 303 (1966), appeared to permit an arrest by a customs agent without a warrant pursuant to § 1581(f), the question was not apparently raised and the court indicated no disposition to depart from United States v. Burgos, 269 F.2d 763 (2d Cir. 1959), cert. denied, 362 U.S. 942, 80 S.Ct. 808, 4 L.Ed.2d 771 (1960), wherein the court indicated that no federal statute authorizes an arrest without a war-

rant by a customs official in a case such as this.[5, 6]

The validity of an arrest which is not specifically authorized by a federal statute is determined by the law of the state in which the arrest was made—in this case, New York. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); see United States v. Robinson, 325 F.2d 391 (2d Cir. 1963). At first glance the arrest here might appear to be authorized by § 177 of the New York Code of Criminal Procedure [7] which authorizes a "peace officer", under certain circumstances, to make an arrest without a warrant. That statute has been held inapplicable to arrests by customs agents, however, for the reason that a customs agent is not a peace offi-

---

5. It is also submitted that authority to make the arrest can be found in 19 U.S.C. § 482, which provides:

   "Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law * * *."

   It is clear that since the search in this case in no way parallels the type of search provided for in § 482, that statute is inapplicable.

   19 C.F.R. § 23.11(g) does not authorize the seizure since that section provides that customs agents must lawfully be on property prior to making a seizure. The lawfulness of the agents' presence in the store for the purpose of making a search pursuant to an arrest is the central issue of the case. § 23.11 in no way authorizes the original entry since defendant's possession of the contraband was not "open and visible" prior to the entry. § 23.11(a), n. 20.

6. While the pertinent arrest in United States v. Burgos was made on the ground the defendant was in the country illegally and while it did not, therefore, in-

   volve a violation of a law "respecting the revenue", the court indicated quite clearly that 26 U.S.C. § 7607 is the only federal statute authorizing an arrest by a customs agent without a warrant. Furthermore, it is arguable that the arrest in *Collins* was not made for an offense which involved the revenue.

7. "§ 177. *In what cases allowed*

   "A peace officer may, without a warrant, arrest a person,

   "1. For a crime, committed or attempted in his presence, or where a police officer as enumerated in section one hundred fifty-four-a of the code of criminal procedure, has reasonable grounds for believing that a crime is being committed in his presence.

   "2. When the person arrested has committed a felony, although not in his presence;

   "3. When a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it;

   "4. When he has reasonable cause for believing that a felony has been committed, and that the person arrested has committed it, though it should afterward appear that no felony has been committed, or, if committed, that the person arrested did not commit it;

   "5. When he has reasonable cause for believing that a person has been legally arrested by a citizen as provided in sections one hundred eighty-five, one hundred eighty-six and one hundred eighty-seven of this code. As amended, L.1958, c. 706, § 1; L.1960, c. 942; L.1963, c. 580, eff. July 1, 1963."

cer within New York's definition of that term. United States v. Viale, 2 Cir., 312 F.2d 595 (2d Cir.), cert. denied, 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963). The only remaining New York statute possibly authorizing the arrest in this case is § 183 of the New York Code of Criminal Procedure which grants limited authority to a private citizen to make an arrest, as follows:

"A private person may arrest another,

"1. For a crime, committed or attempted in his presence;

"2. When the person arrested has committed a felony, although not in his presence."

■ Passing over the question of whether a violation of Title 18 U.S.C. § 545 constitutes a "crime" within the meaning of § 183(1), it is now clear that the agents here were entitled to arrest for a crime committed in their presence only if their observations, prior to making the arrest, revealed sufficient evidence to convict the defendant of the crime of knowingly possessing contraband jade. People v. Valentine, 17 N.Y. 2d 128, 269 N.Y.S.2d 111, 216 N.E.2d 321 (1966); People v. Caliente, 12 N.Y.2d 89, 236 N.Y.S.2d 945, 187 N.E.2d 550 (1962).

"The lawfulness of the arrest does not depend upon the officer's suspicions, or even upon a reasonable belief on his part that a crime has been committed. In this respect the statute distinguishes between an arrest for a misdemeanor and an arrest for a felony. Unless the misdemeanor is committed in the officer's presence, he is not privileged to arrest the defendant, and evidence thereafter obtained as a result of a search is inadmissible * * *."[8] (People v. Caliente, 12 N.Y.2d 89 at p. 94, 236 N.Y.S.2d 945, at p. 947, 187 N.E.2d 550 at p. 552 (1962))

"Prior to July 1, 1963, an arrest without a warrant for the commission of a misdemeanor was unlawful unless the arresting officer observed the crime being committed in his presence. * * * It was clear * * * that under the statute in effect *at that time* the police officer's observations prior to the arrest had to amount to enough evidence to convict the defendant of a crime." (People v. Valentine, 17 N.Y.2d 128, at p. 131, 269 N.Y.S.2d 111, at p. 113, 216 N.E.2d 321 at p. 322 (1966))

Applying the foregoing principles to the facts here, the proof possessed by the agents when they made the arrest was insufficient to establish that a crime was being committed by the defendant in their presence. On the key issue of whether the defendant knew of the presence of the contraband jade secreted in the furniture, the agents saw him take possession of the furniture and apparently work on it in the rear of his shop, but they never actually saw him remove or indicate conscious possession of a single piece of jade before he was arrested. Thus, although they had abundant probable cause, they were unable to meet the standard required by § 183(1) as construed by the highest court of the State of New York. When the New York legislature has intended the validity of an arrest to depend on probable cause, it has clearly so stated. See § 177, N.Y.Code Crim.Procedure, supra.

■ Section 183(2), which authorizes a private person to arrest one who has committed a "felony", might permit the agents to arrest the defendant here if the defendant's violation of Title 18 U.S. C. § 545 constituted a felony under New York law, but the term "felony" as used in New York statutes does not refer to federal felonies which are not also felonies under New York law. People v. Holland, 305 N.Y. 617, 111 N.E.2d 734 (1953); Matter of Donegan, 282 N.Y. 285, 26 N.E.2d 260 (1940); Matter of Cohen, 278 N.Y. 584, 16 N.E.2d 111 (1938) (memorandum decision); In re Keogh, 25 App.Div.2d 499, 267 N.Y.S.2d

---

8. The court was talking of a portion of § 177 of the New York Code of Criminal Procedure which is identical to § 183(1). The same was true in People v. Valentine.

87 (2d Dept.), modified on other grounds, Keogh v. Richardson, 17 N.Y.2d 479, 266 N.Y.S.2d 984, 214 N.E.2d 163 (1965); Matter of Canter, 146 Misc. 123, 261 N.Y.S. 872 (Surr.Ct.1933); Westbrook v. New York Sun Assn., 58 App. Div. 562, 69 N.Y.S. 266 (2d Dept.1901). See also United States ex rel. Nersesian v. Fay, 239 F.Supp. 142 (S.D.N.Y.1965).

Section 2 of the New York Penal Law provides:

"Felony. A 'felony' is a crime which is or may be punishable by:

1. Death; or,

2. Imprisonment in a state prison.

"Misdemeanor. Any other crime is a 'misdemeanor'."

A violation of Title 18 U.S.C. § 545 is punishable neither by death nor by imprisonment in a state prison, and it finds no counterpart in New York's Penal Law. It would not therefore constitute a "felony" under New York law and could not be the subject of private arrest under § 183(2).

■ Aside from the statutes already noted, no other authority for the arrest here appears to exist. No common law principles are available to vest customs agents here with powers to arrest for the crime alleged in the absence of a warrant. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). In concluding that the motion to suppress must therefore be granted, the Court acts with reluctance for the reason that the customs agents possessed ample probable cause to believe that a violation of Title 18 U.S.C.A. § 545 was being committed by the defendant—a belief which was confirmed by the seizure.

The Court is aware of the fact that the Court of Appeals for this Circuit has in several decisions assumed that § 183 would authorize an arrest under circumstances similar to those present here. United States v. Viale, supra; United States v. Burgos, supra; United States v. Park Ave. Pharmacy, 56 F.2d 753 (2d Cir. 1932); see Coplon v. United States,

89 U.S.App.D.C. 103, 191 F.2d 749, cert. denied, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952). Only in Marsh v. United States, 29 F.2d 172 (2d Cir. 1928), cert. denied, 279 U.S. 849, 49 S.Ct. 346, 73 L.Ed. 992 (1929), was the issue closely scrutinized and that case appears to be *sui generis* since Judge Learned Hand rested the Court's decision there (that a state officer could arrest for violation of the federal Prohibition Law) rather heavily on the State's pledge—though not officially enacted into statutory law—that the State would do its part to support the particular federal law forming the basis of the arrest. It is true that, subsequent to *Marsh*, Judge Hand indicated that any doubt concerning the law at the time of *Marsh* had been dispelled by Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) and United States v. Di Re, supra. United States v. Coplon, 185 F.2d 629 (2d Cir. 1950), cert. denied, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952). In *Di Re*, however, the Court merely *assumed* that a state officer could make an arrest for a federal offense and then held the search illegal *even* under New York law. Although *Johnson* involved an arrest by an officer of the State of Washington for a federal offense, the court never considered the scope of Washington's definition of a crime or of a felony.

In view of the recent decision of the highest court of the state interpreting the meaning of a crime's being committed in one's presence, an interpretation which must be respected by federal officers seeking as private persons to avail themselves of such a provision, and in light of the plain limitations found in the New York statutory definition of the term "felony" as used in § 183, this Court would not be justified in indulging in judicial legislation that would construe § 183 to sanction the arrest here, however guilty the defendant is of the crime charged. The remedy lies in federal or state enabling legislation.

So ordered.