**UNITED STATES of America,**
**Appellee,**

v.

**Edward M. HASKIN, a/k/a Edward M.**
**Haskins, Defendant–Appellant.**

**No. 00–1188.**

United States Court of Appeals,
Second Circuit.

Argued: Aug. 30, 2000.

Decided: Sept. 27, 2000.

Thomas A. Zonay, Ford & Zonay, P.C., Woodstock, VT, for Defendant–Appellant.

David V. Kirby, Chief Assistant United States Attorney, Criminal Division (Charles R. Tetzlaff, United States Attorney for the District of Vermont, Gary G. Shattuck, Assistant United States Attorney, on the brief), Burlington, VT, for Appellee.

Before: NEWMAN, STRAUB, and SACK, Circuit Judges.

PER CURIAM.

Defendant Edward M. Haskin challenges the District Court's (J. Garvan Murtha, *Chief Judge*) denial of his motion to suppress firearms found in his home, which led to his plea of guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). On appeal, Haskin argues that the state police officers who seized the weapons had no authority to effectuate a warrantless seizure for violation of a federal law. For the reasons that follow, we uphold the order denying the motion to suppress.

## BACKGROUND

The factual circumstances underlying the motion to suppress are not in dispute. In December 1998, a Vermont State Police Officer ("state officer") was summoned to a local ski resort to investigate a number of burglaries that had occurred there. Haskin, who was an employee of the ski resort, had confessed to participation in the robberies, orally and in writing, to a representative of a private security firm employed by the ski resort. The state officer met with the security employee, and eventually with Haskin. Haskin again cooperated, giving the state officer a tape-recorded statement, and consenting to a search of his home and his automobile. The consent was limited to allowing the state officers to search for items that were taken from the burglaries.

During the search of Haskin's home, one state officer, Sergeant James Cruise, noticed a number of firearms in plain view. Cruise asked Haskin about his criminal history and Haskin responded that he might have had a felony conviction in California. Cruise confirmed this information by a criminal history check. Based upon his knowledge of Haskin's criminal history, and his belief that it was a violation of federal law for Haskin to be a felon in possession of a weapon, Cruise seized the weapons. A later check revealed that two of these guns were stolen.

Haskin was charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count 1) and transportation of stolen firearms, in violation of 18 U.S.C. § 922(i) (Count 2). Pursuant to an agreement with the government, Haskin pleaded guilty to Count 1 of the indictment, and was sentenced principally to a term of imprisonment of 27 months.

Prior to his plea of guilty, Haskin moved to: (1) suppress statements he made to security personnel and the state officer on the ground that he was subjected to custodial interrogation without proper *Miranda* warnings, *see Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and (2) suppress the firearms found in his home on grounds that his consent was not voluntarily granted, the seizure exceeded the scope of the consent, and because the state officers lacked authority to make the seizure. The District Court denied the suppression motion in all respects in an order dated October 13, 1999. Through his plea agreement, Haskin reserved the right to appellate review of the District Court's denial of his motion to suppress. On appeal, he argues only that the seizure was beyond the authority of the state officers because they are not authorized to enforce the federal criminal laws.

## DISCUSSION

Although this is not the first time we have addressed the issue presented by this appeal, namely, whether state law enforcement personnel have the authority to enforce violations of federal law, we believe it necessary to clarify what we have earlier decided.

In *Marsh v. United States,* 29 F.2d 172 (2d Cir.1928) (L. Hand, J.), *cert. denied,* 279 U.S. 849, 49 S.Ct. 346, 73 L.Ed. 992 (1929), we held that a New York State trooper was authorized under federal and state law to arrest a defendant for a federal misdemeanor committed in the trooper's presence. After pointing out that "it has been a universal practice of police officers

in New York to arrest for federal crimes," 29 F.2d at 173, Judge Hand explained that federal law is "the supreme law of the land," and, thus, federal laws such as the National Prohibition Law at issue, are "as valid a command within the borders of [the state] as one of [the state's] own statutes," *id.* at 174. While recognizing that such arrests "may be ... limited by the law of the state where the offender may be," Judge Hand refused to attribute to Con-· gress an intent to restrict enforcement to federal government officials or to the administrative machinery set forth in the federal statute at issue. *Id.; see United States v. Polito,* 583 F.2d 48, 51 (2d Cir. 1978) (citing *Marsh* for the proposition that "New York police officers are authorized to arrest for state and federal offenses").

Subsequently, we elaborated upon the proposition alluded to in *Marsh* that, in the absence of a federal statute authorizing an arrest by any officer (federal or state), "'the law of the state where an arrest without warrant takes place determines its validity.'" *United States v. Viale,* 312 F.2d 595, 599 (2d Cir.), *cert. denied,* 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963); *United States v. Swarovski,* 557 F.2d 40, 43 (2d Cir.1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978) (both quoting *United States v. Di Re,* 332 U.S. 581, 589, 591, 68 S.Ct. 222, 92 L.Ed. 210 (1948)); *see also Swarovski,* 557 F.2d at 48 ("The United States Supreme Court ... has ruled that ... one must look to state law to find the authority for a state peace officer or a private person to arrest someone who has committed a federal felony....."). We held in *Viale* that the officers were authorized to arrest for violation of a federal misdemeanor under the New York State statute that allows a private citizen to arrest for misdemeanors committed in his or her presence, *see* 312 F.2d at 600–01, and in *Swarovski* that "the statutory provisions of the State of New York which authorize arrests by private persons of another person who is in the act of committing or has in fact just commit-

ted a felony in the State of New York, include felonies under the laws of the United States as well as those under the laws of New York," 557 F.2d at 47.

■ In light of our precedents, it is clear that Haskin is incorrect in his assertion that, in the absence of a controlling federal statute, federal law determines the authority of state officers to arrest or seize evidence of federal crimes. Indeed, the cases to which the defendant refers, relate only to whether state or federal law applies in determining whether evidence, validly seized by state officers, is admissible in federal court in a federal criminal prosecution; those cases are irrelevant to the issue of the authority of a state officer to arrest a defendant for a federal crime or to seize evidence incident to such an arrest. *See United States v. Pforzheimer,* 826 F.2d 200, 202 (2d Cir.1987) ("We are presented here with the ... issue of whether the state or federal exclusionary rule should be applied in ruling on a motion to suppress evidence in a criminal trial in federal court when the evidence in question was solely the product of a state investigation."). *See also United States v. Brown,* 52 F.3d 415, 420 (2d Cir.1995) (explaining that the rule established by *Pforzheimer,* that federal exclusionary law is applicable in federal court even when state officers are involved in the case, is dictated in large part by the need for uniform rules in federal court).

■ Further, Haskin's reliance on the absence of federal statutory authorization for state officers to generally enforce federal criminal laws is also unpersuasive. "[I]n the absence of persuasive reasons either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained," we will not presume that federal regulation of a particular field preempts state enforcement activity, *De Canas v. Bica,* 424 U.S. 351, 356, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976) (internal citations and quotation marks omitted), where

**154**

state enforcement activities do not impair federal regulatory interests, *see Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). *Cf. Gonzales v. City of Peoria,* 722 F.2d 468, 474 (9th Cir.1983) (holding that federal law does not preclude local enforcement of the criminal provisions of the Immigration and Naturalization Act), *overruled on other grounds by Hodgers–Durgin v. De La Vina,* 199 F.3d 1037 (9th Cir.1999). Thus, in the absence of federal preemption in the area of criminal firearm laws—of which there is no issue raised here—we look to state law to determine the authority of the state officers to arrest and seize evidence for violations of federal felonies in this arena.

The Supreme Court of Vermont has conclusively established that its officers are authorized by state statute to arrest for violations of federal law. In *Vermont v. Towne,* 158 Vt. 607, 615 A.2d 484 (1992), the court upheld a defendant's arrest by state officers on the ground that they had probable cause to believe that Towne possessed a firearm in violation of federal law. *See id.,* 158 Vt. at 628, 615 A.2d at 495. The court found that Rule 3(a)(1) of the Vermont Rules of Criminal Procedure, which allows law enforcement personnel to arrest without a warrant "when the officer has probable cause to believe a person has committed or is committing a felony," applies with equal force to federal as well as state law felonies. *Id.,* 158 Vt. at 628, 615 A.2d at 496. The court "conclude[d] that [Rule 3(a)(1) ] permits state officers to make an arrest without a warrant where they have probable cause to believe that a federal felony is being or has been committed." *Id.*

Accordingly, under our precedents, which compel application of Vermont law to determine the validity of the arrest, the state officers in this case were clearly authorized to arrest Haskin; Haskin does not dispute that, the officers possessed probable cause to believe he was in violation of the federal law prohibiting a convicted felon from possessing a weapon.

Furthermore, it is clear that the power to arrest for violations of federal law implies the power to seize evidence incident to that arrest. *See Viale,* 312 F.2d at 601 ("Accordingly we hold that these ... arrests, although made without warrants, were legal under [state law] and that the searches incidental to these arrests were legal."); *Marsh,* 29 F.2d at 175 (upholding the arrest by state officers for violation of federal law and "the seizure [of evidence], which went along with it, [which] was reasonable and lawful").

**CONCLUSION**

For the foregoing reasons, we uphold the District Court's denial of the motion to suppress and affirm the judgment of conviction.