GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

RAYMOND GUMBS, Defendant

Crim. No. 197-77

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

November 30, 1977

PETERSEN, *Judge*

MEMORANDUM OPINION

The defendant herein was kept under surveillance for

approximately three (3) weeks. Then on October 21, 1977, three police officers observed the defendant operating a vehicle bearing license tag number T-23261. Around 10:25 a.m., he was observed walking towards Market Square. Pursuant to an arrest warrant signed by a Judge of this Court on October 19, 1977, he was arrested in the Market Square.

At the time of his arrest the officers also had in their possession a search warrant for the search of the defendant's "person, parcels and bags." After presenting the defendant with the warrants, the defendant inquired as to why he was being arrested and was advised by the officers that he was being arrested for illegal sale of Puerto Rico lottery tickets. The defendant thereupon exclaimed that he no longer sold Puerto Rico lottery tickets and that the officers could search his person or his car. The three officers then followed the defendant to his locked car which was parked approximately two to three blocks away. They asked him to open the trunk of his car. Observing some lottery schemes in the trunk of the car, they inquired of the defendant where he got them. They were then seized. Next they requested the defendant to open his car. Upon entering they asked him to open his car console where they observed a brown note book which was seized as well as some lottery tickets partially protruding from an envelope. These were likewise seized by the three officers.

At no time was the defendant advised of his constitutional rights prior to being taken before a Judge of this Court.

The defendant now seeks to have the evidence suppressed.

The Government contends that the seizure of the lottery tickets, brown note book and schemes was valid because the search was by consent.

The defendant denied ever having given permission for the search of said vehicle and indicated that he was simply following police officers' instructions.

 Absent a warrant, the Government assumes the burden of persuasion that at least one of the narrow exceptions to the Fourth Amendment requirement applies to this case.

In this case the Government does not suggest that a warrant was not needed because the officers were engaged in "hot pursuit", Warden v. Hayden, 387 U.S. 298, 87 S.Ct. 1642 (1967) : nor does it attempt to justify the warrantless search under the "plain view" doctrine. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 443; nor does the evidence disclose a fact pattern similar to the emergency situation which justified the warrantless intrusion in Schmerber v. California, 384 U.S. 757 (1966).

We are left then with only two possible theories under which the warrantless search involved here may be considered to be valid: (1) that the search was valid because incident to a lawful arrest or (2) that the search was valid because voluntarily consented to by the defendant.

 The Government, in order to justify this seizure of evidence under Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034 (1969), must affirmatively show that a search of any place beyond the arrestee's person which was made contemporaneous to an arrest including the space which encompasses a motor vehicle, was conducted within the area of the arrestee's immediate control as circumscribed by what is reasonably within his lunge, reach or grasp.

In United States v. Day, 331 F.Supp. 254 (E.D.Pa. 1971), the defendant was arrested while seated in his automobile and then placed in a police van to be taken to the station house. Subsequent to his removal, the motor vehicle in

which he had been arrested was searched. Without discussing whether the search would have been proper had it been conducted while the defendant was still in the automobile, the United States District Court suppressed the evidence seized because "[c]ertainly [the defendant] could not [while in the police wagon] have reached below the seat of his car to grab a weapon or destroy evidence." Id. at 255–256.

As the appellant in Commonwealth v. Ceravolo, 224 Pa. Super. 464, 307 A.2d 288 (1973), left the club in which he was employed and proceeded toward his automobile which was parked a short distance away, he was stopped by a law enforcement officer, escorted back to the club, and then served with an arrest warrant. Immediately following the arrest, the officer asked Ceravolo for the keys to his automobile, opened it, and discovered marijuana. The Superior Court of Pennsylvania held that the search of the vehicle was improper, reasoning that since "[a]ppellant was next to the building when the officer asked for his keys, and the automobile was locked . . . [t]here is no reasonable reason to believe that [he] was in a position either to use anything in the automobile to endanger the officer . . . or to destroy any evidence". 307 A.2d at 289.

In this case, the defendant Raymond Gumbs was arrested approximately two to three blocks from where his vehicle was located. It is therefore incumbent upon the Government to establish that the defendant at the time of his arrest could use anything in the automobile to injure the three police officers or that he was in a position to destroy, conceal or demolish the evidence; this the Government has not done.

■ If this warrantless search is to be upheld, it must qualify under the "automobile exception", Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280 to the basic proposition that "searches conducted outside the judicial process,

without prior approval by a judge are per se unreasonable under the Fourth Amendment," Katy v. United States, 389 U.S. 347, 88 S.Ct. 507. The necessary conditions are (1) probable cause to believe that the automobile contains evidence of crime and (2) that exigent circumstances making the resort to the warrantless search reasonable and necessary. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975; Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022.

█ The Government has failed to establish that the officers had probable cause to believe that there was any lottery paraphernalia in the defendant's car nor did they even address that issue in their arguments or briefs. The officers' testimony is devoid of any facts to support that belief.

Assuming arguendo that probable cause existed to believe that the fruits of the crime were concealed in the defendant's vehicle, has the Government presented facts sufficient for this Court to find that there were exigent circumstances? I find they have not. The police officers testified that the defendant was kept under surveillance since September 26, 1977. Based on their prior observations of the defendant, warrants were obtained for the arrest of the defendant and the search of the defendant's person. The officers had ample opportunity to secure a warrant for the search of the defendant's vehicle. I find that the police officers knew what they were looking for and knew that certain evidence would likely be on the defendant's person or in his vehicle. Yet they chose not to secure a search warrant for the vehicle.

Finally, the Government seeks to justify its search on the basis of consent.

█ It is a well established principle that consent to a search and the waiver of Fourth Amendment rights which

219

it implies, must be "freely and voluntarily given." Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788 (1968).

██ The Government bears the burden of proving waiver—a burden which is discharged only upon a showing of clear and convincing evidence. United States v. Marotta, 326 F.Supp. 377, 380, (1971).

In Government of the Virgin Islands v. Berne, 412 F.2d 1055 (3rd Cir. 1969), the Court therein stated:

There are certain things which consent obviously is not. Clearly, consent is not merely acquiescence to a claim of lawful authority. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788 (1968) nor is it dependent upon any affirmative assertion or rights by the subject. . . . Consent must never be equated to nonresistance to police orders or suggestions.

██ The Government relies heavily on the words uttered by the defendant to establish consent to the search. Even if the Government's version were accepted that such words were uttered by the defendant, the manner and intonation is of great significance in determining whether defendant was voluntarily consenting to an act which he knew he was not compelled to agree to. Here the defendant was under arrest. Moreover, arrest carries its own aura of coercion which makes the burden upon the Government to show voluntary consent particularly heavy. Gorman v. United States, 380 F.2d 158. It has never been suggested that the mere fact that a suspect is under arrest negate the possibility of a voluntary consent. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988 (1974).

██ The officers having given him several documents purporting to be warrants and the defendant not having ample opportunity to read them, I believe that his words were more in the nature of a submission to authority than consent. This conclusion is reinforced by defendant's demeanor at the hearing. His manner was that of a man

who does not yield his rights unless compelled so to do as a result of false bravado.

Among those factors which courts have considered as tending to show that the consent was coerced are: (1) that consent was made by an individual already arrested, see Channel v. United States, 285 F.2d 217 (9 Cir. 1962); (2) that consent was obtained despite a denial of guilt, see Higgins v. United States, 93 U.S. App. D.C. 340, 209 F.2d 819 (D.C. Cir. 1954); and Judd v. United States, infra; (3) that consent was obtained only after the accused had refused initial requests for consent to search, see, United States v. Ziemer, 291 F.2d 100 (7 Cir.); cert. denied 368 U.S. 877, 82 S.Ct. 120, 7 L.Ed.2d 78 (1961); (4) that consent was given where the subsequent search resulted in a seizure of contraband which the accused must have known would be discovered, see Higgins v. United States, supra; United States v. Busby, 126 F.Supp. 845 (1954); (5) that consent was given while the defendant was handcuffed, see Channel v. United States, supra; United States v. Burgos, 269 F.2d 763 (2 Cir. 1959); cert. denied 362 U.S. 942, 80 S.Ct. 808 (1962).

Among those factors which courts have considered as tending to show the voluntariness of the consent are: (1) that consent was given where the accused had reason to believe that the police would find no contraband, see United States v. Dornblunt, 261 F.2d 949 (2 Cir. 1958); cert. denied 360 U.S. 912, 79 S.Ct. 1298 (1959); United States v. Martin, 176 F.Supp. 262, 268 (S.D.N.Y. 1959); (2) that the defendant admitted his guilt before consent, see United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896 (1944), and State v. Bindhammer, 209 A.2d 124 (1965); (3) that the defendant affirmatively assisted the police officers, see United States v. Burgos, supra; United States v. Smith, supra.

221

His words appear to be no more specific and unequivocal than those uttered by the defendant in Channel v. United States, 285 F.2d (9th Cir. 1960) to two federal agents:

My apartment is clean. There is nothing there you can go out and search the place.

Nor in Judd v. United States, 190 F.2d 649 (U.S. App. D.C.) wherein the words purported consent were summarized by the Court as "I have nothing to hide, you can go there and see for yourself."

In holding that such a statement made by a defendant in jail did not indicate a free, intelligent, unequivocal and specific consent, the Court said:

Conceivably, that is the calm statement of an innocent man; conceivably again, it is but the false bravado of the small-time criminal. But however it be characterized, it hardly establishes willing agreement that the officers search the household without first procuring a warrant. Comparable statements have been held insufficient where the victim of the search was safely in his home, his place of business, or in his automobile!

. . . .

Surely they acquire no more force when procured under the circumstances here present . . . . 190 F.2d at 651.

See also Commonwealth v. Pichel, 323 A.2d 113 (after the police had begun to read a search warrant, defendant's informing them to go ahead and search was construed as a submission to the show of authority and not as a "consent" to the search.)

Accordingly, I cannot find that there was consent, unequivocal, specific and intelligently given which amounted to a knowing and voluntary waiver of this defendant's constitutionally protected rights.

Based on the foregoing, the defendant's motion to suppress is granted.