**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**HOLLY BOWEN, Defendant**

Crim. No. F28/1998

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

July 30, 1998

LULIT MILLION, ESQ., (Assistant Attorney General), St. Thomas, U.S.V.I., *for plaintiff*

RUTH MILLER, ESQ. (Law Offices of Ruth Miller), St. Thomas, U.S.V.I., *for defendant*

HOLLAR, *Judge*

## MEMORANDUM OPINION

This matter was before the Court for a hearing on March 30, 1998 on defendant's motion to suppress: (1) any statements made by her without the benefit of *Miranda* warnings; and (2) any physical evidence seized from her room on or about December 20, 1997, without a warrant. For the reasons stated below, the motion is *GRANTED IN PART* and *DENIED IN PART*.

## I. FACTUAL BACKGROUND

On or about December 20, 1997, Holly Bowen, the defendant, was a tenant leasing living space within a home at Estate Misgunst #5BB. Her landlord, Steve Manion, also resided on the property in a separate part of the house. During the early morning hours of December 20, 1997, defendant and her landlord became involved in a dispute during which Mr. Manion called for police assistance. Officers D. Vanterpool and D. Jeffers responded. When they arrived, they found and spoke to Mr. Manion outside of the house. The defendant voluntarily came out of the house and commenced to interrupt the communications between Mr. Manion and the police in order to impose her version of the events.

Mr. Manion informed the officers that when he came home that evening, he found his glass table broken and confronted the defendant about it. Mr. Manion further stated that the defendant became verbally abusive, told him to leave her alone, alerted him that she had a gun and threatened to "kill him".

After speaking to the parties, the officers prepared to depart since it appeared that the matter had diffused. Mr. Manion, however, insisted that they [the police] remain, enter the home, view the broken table and locate the firearm. The police complied with Mr. Manion's request. While inside the home, the defendant admitted to to the police that she had a gun in her room on the second floor. After obtaining verbal and written consent from Mr. Manion, the police went to defendant's portion of the house on the second floor and found a firearm in the defendant's room. After seizing the gun, the defendant was asked by the police if she had a license for the gun. In response, the defendant admitted that she did not have a license and added that she was unaware that a license was required since she brought the gun to the Virgin

48

Islands from the States. Although the defendant was arrested for unlawful possession of a firearm, destruction of property and disturbance of the peace, the Government only charged her with a single count of unlawful possession of a firearm, in violation of V.I. CODE ANN. tit. 14 § 2253.

## II. DISCUSSION

The essential issues presented to this Court are: (1) whether incriminating statements made by the defendant to the police without first being given her *Miranda* warnings should be suppressed; and (2) whether the firearm seized by the police as a result of a search of the defendant's room leased exclusively to her should be suppressed since no search warrant was ever obtained.

### A. THE INCRIMINATING STATEMNTS MADE TO THE POLICE BY THE DEFENDANT SHOULD NOT BE SUPPRESSED, DESPITE THE FACT THAT THE DEFENDANT WAS NOT GIVEN ANY "MIRANDA" WARNINGS.

The defendant made certain incriminating statements both before and after a firearm was located in her bedroom. No *Miranda* warnings, however, were given to the defendant before the statements were uttered. As a result of the critical omission by the police, the defendant contends that her statements should be suppressed.

To determine the admissibility of the defendant's inculpatory remarks made *before* the firearm was located and seized, a two (2) prong analysis is required. First, it must be determined whether the suspect was "in custody" and second, whether the police "interrogated" the suspect. *United States v. Mesa*, 638 F.2d 582, 585 (3d Cir. 1980).

Custody for *Miranda* purposes involves the "[deprivation] of . . . freedom of action in any significant way". *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).[1] Moreover, the defendant bears the burden

---

[1] In *Miranda*, the Supreme Court established a procedural mechanism that safeguards the exercise of the Fifth Amendment privilege against inherently coercive effects of custodial interrogation. The Fifth Amendment of the U.S. Constitution is made applicable to the Territory of the Virgin Islands through Section 3 of the Revised Organic Act of 1954, as amended, and codified at 48 U.S.C. 1561.

of proving custody, *U.S. v. Charles,* 738 F.2d 686, 692 (5th Cir. 1984), and the Court must consider the totality of the circumstances to determine whether the individual is in custody for *Miranda* purposes. *Minnesota v. Murphy,* 465 U.S. 420, 429-34 (1984). Under circumstances where questioning takes place in surroundings familiar to the accused, custody is less likely to be found. *Beckwith v. U.S.* 425 U.S. 341, 345-47 (1976). The test is objective, and the subjective beliefs held by the officers or the persons being interrogated are not germane. *Stansbury v. California,* 511 U.S. 318 (1994).

In the matter *sub judice,* the defendant was at her own residence, free to move around, had no restraints placed upon her and apparently was not subjected to "compelling influences or psychological ploys". The questioning by police was brief and the character of the questions could not be considered as an "interrogation" especially since most of defendant's statements were made as a result of her interrupting conversations the police were having with the complainant. Also noteworthy is the fact that it was Mr. Manion who initially disclosed the inculpatory statements of defendant, specifically her possession of a firearm and her threat to kill him. Any questions posed to the defendant were mere followups to Mr. Manion's claim, a claim which defendant now denies and therefore raises as a credibility issue for trial.

Although the defendant refers to *Oregon v. Elstad,* 470 U.S. 298 (1985) and *Orozco v. Texas,* 394 U.S. 325 (1969) to substantiate her contention that she was in "custody", thus requiring *Miranda* warnings to be given to her before being interrogated by the police, the defendant's reliance on those cases is misplaced and inapposite to the case *sub judice* because in *Oregon,* the initial contact by the police was pursuant to an *arrest warrant,* consequently the defendant was obviously "not free to leave" when the interrogations began. Similarly, in *Orozco,* the Court held that "[f]rom the moment he (defendant) gave his name, according to the testimony of one of the officers, petitioner *was not free to go* where he pleased but was *under arrest.*

■ In further buttressing the contention that defendant herein *was not* in custody, the police were ready to leave the premises, without action, after defendant repeated the incriminating remarks first uttered to Mr. Manion. This initial intention by the police to

50

leave, accurately reflected their state of mind regarding the absence of "custody" of the defendant. Only after the complainant beseeched the police not to leave did the police reconsider and reluctantly decide to look for the gun defendant allegedly had in the house.

■ Admittedly, after finding the firearm in the defendant's room, the defendant was obviously "no longer free to go" and was therefore "in custody". Nevertheless, the defendant's admission, that she had no license for the firearm, made as a result of being interrogated by the police, is still not suppressible under the "inevitable discovery" exception to the exclusionary rule. *Murray v. United States*, 487 U.S. 533, 539 (1988) (noting inevitable discovery is actually an extrapolation from the independent source doctrine, since the tainted evidence would be admissible if it inevitably would have been discovered). Separate and apart from defendant's confession of having no license, an independent routine check of the firearm licensing registry for the St. John/St. Thomas District and St. Croix District would have readily and inevitably disclosed the same thing, to wit: that defendant was not licensed to carry or own a gun the Virgin Islands.[2]

## A. THE SEARCH OF DEFENDANT'S ROOM, WITHOUT A WARRANT AND THE SEIZURE OF DEFENDANT'S FIREARM FOUND THEREIN, VIOLATED DEFENDANT'S FOURTH AMENDMENT RIGHTS.

With respect to the second issue, the seizure of the firearm from defendant's residence presents different problems for the Government. The search of defendant's room on December 20, 1997 was undertaken without a warrant. Given this, the Government has to prove that the search of the defendant's room was permitted under

---

[2]See also *United States v. Belki Maria Vasquez de Reyes*, No. 97-7328, slip op. at 6, 7 (3rd Cir. July 8, 1998) (citing *Nix v. Williams*, 467 U.S. 431 (1984); *United States v. Martinez-Gallegos*, 807 F.2d 868, 870 (9th Cir. 1987) and *United States v. Haro-Salcedo*, 107 F.3d 769 (10th Cir. 1997).

an exception to the Fourth Amendment's warrant requirement. The Fourth Amendment[3] states:

> "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized".

At the hearing, the police officers alleged that defendant "consented" to a search of her room. It is clear that a search based upon the consent of an individual may be undertaken by government actors without a warrant or probable cause, and any evidence discovered during the search may be seized and admitted at trial. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973); *U.S. v. Wright-Barker,* 784 F.2d 161, 176 (3d Cir. 1986). Consent, which may be expressed or implied, is a voluntary waiver of Fourth Amendment rights. *Bustamonte,* at 235. However, the Government has the burden of proving that consent was, in fact, "freely and voluntarily given", *Bumper v. North Carolina,* 391 U.S. 543, 548 (1968); and the standard which must be met is by "clear and convincing evidence". *Government v. Gumbs,* 14 V.I. 214, 220 (Terr. Ct. 1977).

Keeping the standard of proof in mind, the Court must consider the quality of evidence presented by the Government. During the hearing of March 30, 1998, not one of the police reports nor affidavits provided by the officers claimed that the defendant "consented" to the search of her private room. The conspicuous omission is in stark contrast with the fact that the same reports contain unequivocal written consent to search *by the landlord.* Consent by the landlord, however, is ineffective because his authority to enter the premises is limited to making repairs to property inhabited by defendant, when rent is paid, and the apartment is not abandoned. *U.S. v. Warner,* 843 F.2d 401, 403 (9th Cir. 1988). *See also Stoner v. California,* 376 U.S. 483, 490 (1964) (a night clerk at a hotel does not have the authority to consent to the

---

[3] The Fourth Amendment to the U.S. Constitution is made applicable to the Territory of the Virgin Islands through Section 3 of the Revised Organic Act of 1954, as amended, and codified at 48 U.S.C. 1561.

search of a guest's room because the guest is entitled to the same constitutional protections as the tenant of a house).

■ Alternatively, the Government's only evidence of an alleged consent consists of testimony that: (1) the defendant did not attempt to physically stop the three officers from going up the stairs to search her room once they had announced an intention to do so; and (2) the defendant may have preceded the officers up the stairs, without further word or gesture, as they ascended to perform their search. This "evidence" of defendant's consent is better characterized as acquiescence to a claim of lawful authority. In *Bumper*, Court held that the Government cannot discharge its burden merely by showing "no more than acquiescence to a claim of lawful authority". *Id.* at 548-49. In fact, as defendant testified, she felt as if she didn't have a chance to stop the officers during their ascent to her room.[4] Finally, it is the Court's view that the officers sought and obtained the landlord's consent as a result of the defendant's refusal to give consent to a search of her bedroom. Clearly, the Government has not shown that defendant's consent was unequivocal and specific, *Judd v. United States*, 190 F.2d 649, 650-51 (D.C. Cir. 1951), and defendant's failure to object to the search or to bar the police officers from entering her room or following her up the stairs does not, as a matter of law, equal consent. *United States v. Johnson*, 333 U.S. 10, 13 (1948); *United States v. Gonzalez*, 71 F.3d 819, 829-39 (11th Cir. 1996).

## III. CONCLUSION

The incriminating statements made by the Defendant *before* the gun was located and seized did not require prior *Miranda* warnings because she was not in custody. The admission made by Defendant in response to interrogation made by the police *after* the firearm was located and seized, admitting that she had no license for the gun, also did not require prior *Miranda* warnings because of the inevitable discovery rule. Hence, all the incriminating statements made by defendant are admissible at trial. The firearm, however,

---

[4]One government witness said defendant led the police to her room, however another government witness said defendant followed the police as they went up the stairs to her room. The latter witness' version substantiates an inference that no consent was given by defendant.

53

seized by the police, as a result of a search of the defendant's leased premises, without a warrant and without defendant's unequivocal consent was a violation of the defendant's Fourth Amendment guarantees against unreasonable search and seizure. Accordingly, all physical evidence seized shall be suppressed.